In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2607

United States of America,

Plaintiff-Appellee,

v.

Willie T. Wallace,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:99CR131--James T. Moody, Judge.

Argued January 15, 2002--Decided February 11, 2002


   Before Flaum, Chief Judge, and Coffey and
Easterbrook, Circuit Judges.

   Flaum, Chief Judge.  Willie T. Wallace
pled guilty to one count of violating 18
U.S.C. sec. 922(g)(1) (felon in
possession of a firearm) without the
benefit of a plea agreement. Before
entering his plea, Wallace moved the
district court to suppress evidence. The
district court held a hearing and denied
the motion. After pleading guilty, but
before sentencing, Wallace moved to
dismiss the indictment in its entirety.
The district court denied this motion as
well. Wallace appeals, challenging these
rulings and several sentencing
enhancements. For the reasons stated
herein, we affirm.

I.  Background

   A.  The Predicate Felony

   On March 26, 1998, Wallace was convicted
in the Circuit Court of Cook County for
unlawful use of a weapon, which, at the
time, was a Class 4 felony in Illinois.
However, Wallace's conviction was later
vacated as void ab initio when the
Supreme Court of Illinois ruled that the
Act that had transformed the unlawful use
of weapon ("UUW") charge from a
misdemeanor to a felony violated the
Illinois Constitution. See People v.

Cervantes, 723 N.E.2d 265 (Ill. 1999). As a result, the Circuit Court of Cook County entered a misdemeanor conviction nunc pro tunc.

B.  Wallace's Subsequent Activity

The current appeal arises from two events that occurred after the initial felony, but before the Circuit Court vacated the conviction in May 2000. On April 10, 1999, Hammond Police Officer Michael Serrano responded to a call concerning an armed robbery. The robbery victim described the suspect as wearing a red sweatshirt and black pants and stated that he recognized the suspect from a particular neighborhood in East Hammond, Indiana. Based upon this description, Serrano identified Wallace, who was wearing a red sweatshirt and black pants, as Wallace stood with approximately six other individuals on residential property. Serrano approached the group with his gun drawn (the victim had stated the suspect was armed) and asked all of the individuals to place their hands on the hood of a car parked in the driveway. Serrano patted down Wallace and arrested him after discovering a .38 caliber revolver.

The second incident occurred on May 9, 1999. At approximately 2:35 a.m., officers were dispatched to a nightclub in East Chicago to ensure the peaceful dispersion of the club's guests. While there, Officer Nicholas Kokot observed Wallace remove an assault rifle from the trunk of a white Cadillac and place it in the left rear passenger compartment of the car. Officers stopped the vehicle and arrested Wallace and two other occupants for possession of an AK-47. After determining that the weapon belonged to Wallace, officers released the other individuals.

C.  Proceedings

On September 16, 1999, a federal grand jury returned a two-count indictment against Wallace. Both counts charged Wallace with violations of 18 U.S.C. sec. 922(g)(1) (felon in possession of a firearm). Wallace initially pled not guilty, and the district court scheduled a jury trial for November 15, 1999. Subsequently, Wallace moved to postpone

his trial date on three separate occasions (November 3, 1999; January 5, 2000; March 14, 2000). The magistrate judge assigned to hear Wallace's pre-trial motions granted each continuance, and the district court ultimately scheduled a jury trial for March 22, 2000.

On March 9, 2000, Wallace filed a motion to suppress evidence stemming from both incidents. The district court held a suppression hearing on the day trial was scheduled to begin. After hearing witnesses, the district court credited the officers' testimony regarding each event, holding that Officer Serrano had a legitimate basis to pat down Wallace and his companions and that Officer Kokot observed the illegal activity on May 9. Accordingly, the district court denied Wallace's motion to suppress. Trial was set to begin soon thereafter.

Immediately prior to the trial, and after the district court had assembled potential jurors, Wallace indicated that he wanted to plead guilty to Count I of the indictment. Citing a local rule, the district court commented that all plea agreements must be entered into at least five days prior to the beginning of trial. Wallace's counsel responded that two related events caused the failure to comply with the local rule: (1) the district court scheduled the trial earli er than the parties had anticipated when Wallace moved for a continuance before the magistrate judge; and (2) an earlier plea agreement proffered by the government contained typographical errors indicating Wallace was pleading guilty to both Counts I and II. Upon further questioning from the district court, Wallace's counsel conceded that the government returned a corrected copy of the plea agreement "the next day." The district court ultimately accepted Wallace's guilty plea to Count I of the indictment, while Count II was reserved in abeyance until sentencing on Count I.

After Wallace entered his guilty plea without the benefit of an agreement with the government, but before sentencing, the Supreme Court of Illinois vacated Wallace's March 1998 felony conviction that had served as the predicate for the felon in possession charge. As a consequence, Wallace filed a "motion to

dismiss for lack of subject matter jurisdiction." The district court denied this motion after hearing argument from the parties, sentenced Wallace to 51 months imprisonment and entered an order dismissing Count II of the indictment. In reaching this sentence, the district court considered the offense charged in Count II as relevant conduct in determining Wallace's base offense level. Based upon testimony from the suppression hearing, the court found by a preponderance of the evidence that Wallace possessed the AK-47 on May 9. Wallace continues to dispute the fact that he ever possessed the assault rifle. The court also refused to award a two-point departure for acceptance of responsibility. Wallace appeals.

II.  Analysis

   Wallace first argues that the district court "lacked subject matter jurisdiction" once the Supreme Court of Illinois vacated his felony conviction. As the government appropriately notes, Wallace's argument is not really one of subject matter jurisdiction, see United States v. Martin, 147 F.3d 529, 531-33 (7th Cir. 1998), but rather a dispute concerning whether the government proved all of the elements necessary to sustain a conviction under sec. 922(g)(1). That question is easily answered because Wallace necessarily admitted every element comprising the offense charged after he pled guilty. See United States v. Broce, 488 U.S. 563, 569 (1989); McCarthy v. United States, 394 U.S. 459, 466 (1969) ("a guilty plea is an admission of all the elements of a formal criminal charge."). The elements comprising a sec. 922(g)(1) violation are: (1) possession of a firearm; (2) that had traveled in interstate commerce; (3) by a felon. See United States v. Quintanilla, 218 F.3d 674, 679 (7th Cir. 2000). By pleading guilty, Wallace admitted that he had a prior felony conviction, and he may not challenge that admission before this court./1

   We may dispose of Wallace's appeal of the district court's denial of his motion to suppress for the same reason. Wallace did not reserve the right to appeal any ruling stemming from the suppression hearing, either in writing or orally before the district court. Furthermore,

Wallace's guilty plea rendered irrelevant the evidence obtained during the two incidents because Wallace admitted he possessed a firearm in violation of sec. 922(g)(1).

That leaves Wallace's appeal of the district court's sentencing determinations. Here, Wallace raises two arguments: (1) the district court erroneously considered the charges in Count II as relevant conduct during sentencing; and (2) the district court erred in refusing to depart downward based upon acceptance of responsibility. Both arguments are without merit.

In calculating the base offense level, the district court considered as relevant conduct the charges in Count II of the original indictment and found by a preponderance of the evidence presented at the suppression hearing that Wallace possessed the assault rifle. The Sentencing Guidelines define relevant conduct with respect to offenses that require grouping under sec. 3D1.2(d) as "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." Section 3D1.2 (d), in turn, specifies certain crimes that require grouping, including crimes governed by sec. 2K2.1 (unlawful possession of a firearm). Consequently, the Guidelines required the district court to consider relevant conduct in calculating Wallace's base offense level.

There can be no question that the district court acted properly when considering the charges contained in Count II of the original indictment as relevant conduct under the Sentencing Guidelines. In United States v. Santoro, 159 F.3d 318 (7th Cir. 1998), this court cited with approval a First Circuit rule that "the contemporaneous, or nearly con temporaneous, possession of uncharged firearms is . . . relevant conduct in the context of a felon-in-possession prosecu tion." Id. at 321 (citing United States v. Powell, 50 F.3d 94, 104 (1st Cir. 1995)); see also United States v. Windle, 74 F.3d 997, 1000-01 (10th Cir. 1996) (additional weapons violations should be included as relevant conduct because firearms possessed during a four to five month period meet the "same course of conduct" requirement in sec. 3D1.2).

Here, Wallace twice possessed firearms approximately four weeks apart. This conduct unequivocally falls within the relevant conduct definition announced in Santoro, and the district court properly included it when calculating Wallace's base offense level.

Wallace's last contention--that the district court erred in refusing to depart downward for acceptance of responsibility--must also fail. Sentencing Guideline sec. 3E1.1 states that the district court should decrease the base offense level by two levels "if the defendant clearly demonstrates acceptance of responsibility for his offense." Before the district court--and again before this court--Wallace denied that he ever possessed the assault rifle described in Count II of the indictment. While it is true that the district court ultimately dismissed Count II, it strains credulity to argue for an acceptance of responsibility departure in this case. Wallace's guilty plea is the only factor that he may cite in support of the downward departure, and it is not sufficient for at least three reasons. First, we have often repeated that the mere fact that a defendant pleads guilty does not, standing alone, entitle him or her to the departure. United States v. Simmons, 218 F.3d 692, 696 (7th Cir. 2000) (citing United States v. Branch, 195 F.3d 928, 937 (7th Cir. 1999)). Second, Wallace continues to deny possessing the assault rifle charged in Count II, even though the district court considered that act relevant conduct in determining his base offense level. By definition, then, he is not entitled to the departure. See U.S. Sentencing Guidelines Manual sec. 3E1.1 n. 1(a) (listing "truthfully admitting or not falsely denying any additional relevant conduct" as one important factor in awarding the two-level departure for acceptance of responsibility) (emphasis added); United States v. Sierra, 188 F.3d 798, 804 (7th Cir. 1999) ("A defendant does not accept responsibility when he denies committing criminal actions and relevant conduct which the district court attributes to him.") (emphasis added). Finally, Wallace did not decide to plead guilty until after the district court denied his motion to suppress and assembled jurors for trial. Such eleventh-hour tactics do not warrant the acceptance of

responsibility departure. See United States v. Ewing, 129 F.3d 430, 436 (7th Cir. 1997).

III.  Conclusion

For the foregoing reasons, we AFFIRM Wallace's conviction and sentence.

FOOTNOTE

/1 Wallace's argument lacks merit in any event. The Supreme Court of the United States has held that an offense may be predicated upon a prior state court felony conviction, even though the predicate conviction is subject to collateral attack. Lewis v. United States, 445 U.S. 55, 62 (1980). The Court in Lewis upheld the defendant's gun possession conviction because the relevant statute contained no exception "for a person whose outstanding felony conviction ultimately [turned] out to be invalid for any reason." Id. at 62. We have repeatedly reaffirmed this principle despite different permutations of the change in status regarding the predicate felony. See United States v. Lloyd, 184 F.3d 695 (7th Cir. 1999) (conviction discharged and dismissed following probation pursuant to Illinois first-time offender plan); United States v. Lee, 72 F.3d 55 (7th Cir. 1995) (dealing with defendant's status after conviction was expunged ab initio). These cases reinforce the straightforward principle that the only relevant question is the defendant's status at the time he was charged with unlawfully possessing a firearm.