# Illinois Official Reports

## Supreme Court

---

### *People v. McFadden*, 2016 IL 117424

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLEOF THE STATE OF ILLINOIS, Appellant, v. ONAFFIA McFADDEN, Appellee. |
| Docket No. | 117424 |
| Filed<br>Rehearing denied | June 16, 2016<br>September 26, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Sharon Sullivan, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part.<br>Circuit court judgment affirmed in part and vacated in part. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz and John E. Nowak, Assistant State's Attorneys, of counsel), for the People.<br><br>Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Pamela M. Rubeo, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |

Justices
JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, and Karmeier concurred in the judgment and opinion.

Justice Kilbride concurred in part and dissented in part, with opinion, joined by Justice Burke.

Justices Freeman, Kilbride, and Burke dissented upon denial of rehearing, without opinion.

**OPINION**

¶ 1    This case involves an appeal from a conviction for unlawful use of a weapon by a felon (UUW by a felon). 720 ILCS 5/24-1.1(a) (West 2008). The conviction was based on defendant Onaffia McFadden's possession of a firearm at a time when he had been convicted of aggravated unlawful use of a weapon (AUUW). The appellate court vacated the conviction for UUW by a felon based on this court's decision in *People v. Aguilar*, 2013 IL 112116, which declared section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute unconstitutional and void *ab initio*. 2014 IL App (1st) 102939, ¶ 43. For the following reasons, we reverse that part of the appellate court judgment and reinstate defendant's UUW by a felon conviction.

¶ 2                                   BACKGROUND

¶ 3    In December 2002, defendant, then 17 years old, was indicted in Cook County case No. 02CR 30903 on six counts of AUUW for the events that transpired on November 21, 2002, involving two separate firearms. One count alleged that he carried in a vehicle, outside the home, a .38-caliber handgun which was "uncased, loaded and immediately accessible" in violation of 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2002); one count alleged that he carried in a vehicle, outside the home, a .38-caliber handgun without a valid Firearm Owner's Identification (FOID) card in violation of 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2002); one count alleged that he carried in a vehicle, outside the home, a .38-caliber handgun while under 21 years of age in violation of 720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2002); one count alleged that he carried in a vehicle a 9-millimeter handgun which was "uncased, loaded and immediately accessible" in violation of 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2002); one count alleged that he carried in a vehicle a 9-millimeter handgun without a valid FOID card in violation of 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2002); and one count alleged that he carried in a vehicle a 9-millimeter handgun while under 21 years of age in violation of 720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2002).

¶ 4    Thereafter, defendant pleaded guilty to one count of AUUW in exchange for the dismissal of the other five counts, and he was sentenced to one year of probation. There is no confirmation in the record as to which count of AUUW defendant pleaded guilty or as to the factual basis for the plea. Defendant subsequently violated the terms of his probation, was again sentenced to one year of probation, and was ordered to complete boot camp. His probation was ultimately terminated unsatisfactorily. In 2005, defendant was convicted of

- 2 -

possession of a controlled substance with the intent to deliver, a felony, and was sentenced to six years in prison.

¶ 5 Subsequently, in March 2008, defendant was charged in separate cases with multiple counts of armed robbery (720 ILCS 5/18-2(a)(2) (West 2008)), AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A); (a)(2), (a)(3)(A); (a)(1), (a)(3)(C); (a)(2), (a)(3)(C) (West 2008)), and UUW by a felon "having been previously convicted of the felony offense of [AUUW] under case number 02CR-30903" (720 ILCS 5/24-1.1(a) (West 2008)).

¶ 6 The cases were joined and proceeded to a bench trial. The evidence established that defendant robbed three different victims at gunpoint within a 24-hour period. For purposes of the UUW by a felon charges, defendant stipulated that he "has previously been convicted of aggravated unlawful use of [a] weapon under Case No. 02 CR 30903." The court admonished defendant regarding his understanding that a stipulation is an agreement, and defendant acknowledged that he understood that he was agreeing that he had a prior conviction for AUUW.

¶ 7 The Cook County circuit court found defendant guilty of three counts of armed robbery and two counts of UUW by a felon. Defendant was sentenced to concurrent prison terms of 29 years for each armed robbery conviction, which included 15-year mandatory sentencing enhancements, and a concurrent sentence of 10 years for the UUW by a felon convictions. His motion to reconsider his sentence was denied.

¶ 8 On appeal, defendant's convictions and sentences for armed robbery were affirmed. 2014 IL App (1st) 102939, ¶ 53. With respect to the UUW by a felon convictions, the appellate court vacated one of the convictions based on one-act, one-crime principles. *Id.* ¶ 29. With respect to the remaining conviction, defendant argued that it must be vacated because it was based on his prior 2002 felony conviction of AUUW, which arose from a statute that was held to be facially unconstitutional in *People v. Aguilar*, 2013 IL 112116. 2014 IL App (1st) 102939, ¶ 36. The appellate court held that it was "bound to apply *Aguilar* and vacate defendant's remaining UUW by a felon conviction because the State did not prove an essential element of the offense where it alleged in the charging instrument and proved at trial a predicate offense that has been declared unconstitutional and void *ab initio.*" *Id.* ¶ 43.

¶ 9 The State subsequently filed a petition for leave to appeal in this court, which we allowed. Ill. S. Ct. R. 315 (eff. July 1, 2013). Defendant has cross-appealed, contending that he is entitled to a new sentencing hearing on his 29-year prison sentence for armed robbery.

¶ 10 ANALYSIS
¶ 11 1. The Validity of Defendant's UUW by a Felon Conviction
¶ 12 In *Aguilar*, on appeal from the defendant's conviction for AUUW, this court held that section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute—which prohibited the carrying outside the home of a firearm which is uncased, loaded, and immediately accessible—was facially unconstitutional under the second amendment of the United States Constitution. *Aguilar*, 2013 IL 112116, ¶ 22; *People v. Burns*, 2015 IL 117387, ¶ 21 (clarifying our holding in *Aguilar*). As a result, we reversed the defendant's conviction for AUUW. *Aguilar*, 2013 IL 112116, ¶ 22.

¶ 13 Subsequently, courts have been grappling with the legal effect of our decision in *Aguilar* as it relates to various circumstances. In this appeal, unlike the defendant in *Aguilar*, defendant is not seeking to vacate his 2002 conviction for AUUW. Rather, defendant contends that the

State failed to prove all of the essential elements necessary to sustain his 2008 conviction for the offense of UUW by a felon. 720 ILCS 5/24-1.1(a) (West 2008). Accordingly, defendant contends that his 2008 conviction for UUW by a felon must be vacated.

¶ 14 The UUW by a felon statute makes it unlawful for a person to knowingly possess a firearm "if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2008). This court has explained that to prove the prior felony conviction, the prosecutor need only establish "the defendant's felon status." *People v. Walker*, 211 Ill. 2d 317, 337 (2004). Our statute "does not require proof of a specific felony conviction." *Id.*

¶ 15 In this case, the fact of defendant's prior felony conviction was established when defendant chose to stipulate to his felon status by agreeing that he "ha[d] previously been convicted of aggravated unlawful use of [a] weapon under Case No. 02 CR 30903." It is well settled that a stipulation is "an agreement between parties or their attorneys with respect to an issue before the court" (*People v. Woods*, 214 Ill. 2d 455, 468 (2005)), and a defendant may, by stipulation, waive the necessity of proof of all or part of the State's case against him (*People v. Polk*, 19 Ill. 2d 310, 315 (1960)). When made, a stipulation is " 'conclusive as to all matters necessarily included in it' [citation] and '[n]o proof of stipulated facts is necessary, since the stipulation is substituted for proof and dispenses with the need for evidence' [citation]." *Woods*, 214 Ill. 2d at 469. Thus, a defendant is generally precluded from attacking or contradicting the stipulation. *Id.*

¶ 16 Nevertheless, defendant argues that he should be relieved of his stipulation regarding the fact of his felon status because he asserts that the statute under which he was convicted in 2002 was subsequently declared unconstitutional and void *ab initio* in *Aguilar*. From that premise, he concludes that his prior 2002 felony conviction for AUUW may not then be used to prove the fact of his felon status to support his conviction for the 2008 UUW by a felon offense. Defendant relies on the principles of the void *ab initio* doctrine and its application to facially unconstitutional criminal statutes to support his contention.

¶ 17 When a statute is held to be facially unconstitutional, the statute is said to be void *ab initio*, *i.e.*, void " 'from the beginning.' " *Perlstein v. Wolk*, 218 Ill. 2d 448, 455 (2006) (quoting Black's Law Dictionary 1604 (8th ed. 2004)); *Hill v. Cowan*, 202 Ill. 2d 151, 156 (2002) (limiting the doctrine to facially unconstitutional statutes). A declaration that a statute is void *ab initio* means that the statute was constitutionally infirm from the moment of its enactment and, therefore, is unenforceable. *People v. Blair*, 2013 IL 114122, ¶ 30.

¶ 18 In stating the rationale behind the doctrine and articulating the appropriate remedy, we have explained that when a statute violates the constitution it "suddenly cuts off rights that are guaranteed to every citizen" and "perverts the duties owed to those citizens." *People v. Gersch*, 135 Ill. 2d 384, 397 (1990). Thus, this court found that "[t]o hold that a judicial decision that declares a statute unconstitutional is not retroactive would forever prevent those injured under the unconstitutional legislative act from receiving a remedy for the deprivation of a guaranteed right. This would clearly offend all sense of due process." *Id.* at 397-98. We concluded that "where a statute is violative of constitutional guarantees, we have a duty not only to declare such a legislative act void, but also to correct the wrongs wrought through such an act by holding our decision retroactive." *Id.* at 399.

- 4 -

¶ 19    Thus, in considering the void *ab initio* doctrine's application to various circumstances, we have consistently held that when a criminal statute has been declared facially unconstitutional, a defendant may not be prosecuted under it and, as a remedy, must be allowed to apply the court's declaration as a basis to vacate his judgment of conviction premised on the facially unconstitutional statute. In *Gersch*, for example, the defendant argued on direct appeal from his murder conviction that the State's jury demand violated his constitutional right to a bench trial. He relied on a decision of this court holding that the statute which granted the State a right to demand a jury in certain criminal trials was unconstitutional. *Id.* at 397-98. To remedy the wrong, we reversed his conviction and remanded the cause for a new trial. *Id.* at 401-02. In *People v. Zeisler*, 125 Ill. 2d 42 (1988), defendant filed a successful successive postconviction petition, seeking to vacate his conviction for aggravated arson under the void *ab initio* doctrine after this court declared the aggravated arson statute under which he was convicted unconstitutional. *Id.* at 45-46. In vacating his conviction, we relied on the principle that "the doctrine of void *ab initio* declares a statute unconstitutional, null and void, which results in the court's vacating a conviction based upon such statute." *Id.* at 48.

¶ 20    Indeed, in numerous cases, defendants have successfully had a judgment of conviction vacated because it was premised on a facially unconstitutional statute. See, *e.g.*, *People v. Manuel*, 94 Ill. 2d 242, 244-45 (1983) (affirming on direct appeal the dismissal of an indictment premised on an unconstitutional statute, reasoning that a defendant cannot be prosecuted under a criminal statute that is unconstitutional in its entirety); *People v. Tellez-Valencia*, 188 Ill. 2d 523, 527 (1999) (reversing a conviction where the statute creating the offense was subsequently declared unconstitutional and was therefore unenforceable); *People v. Mosley*, 2015 IL 115872, ¶ 24 (trial court properly vacated defendant's AUUW convictions as remedy for its posttrial finding that offenses charged were based upon the facially unconstitutional statutory sections in *Aguilar*); *People v. Burns*, 2015 IL 117387, ¶ 32 (where defendant was convicted of AUUW and sought to vacate his conviction on appeal based on *Aguilar,* proper remedy was to vacate his conviction). Based on this court's precedent, we continue to reaffirm the principle that the void *ab initio* doctrine renders a facially unconstitutional statute unenforceable and renders a conviction under that facially unconstitutional statute subject to vacatur.

¶ 21    Applying these principles of law to defendant, the void *ab initio* doctrine would enable him to seek to vacate his 2002 AUUW conviction by filing an appropriate pleading. However, in this case, defendant is not seeking to apply the void *ab initio* doctrine to vacate his prior 2002 AUUW conviction. Rather, defendant is seeking to reverse his 2008 conviction for UUW by a felon, a constitutionally valid offense, by challenging the sufficiency of the evidence to convict him. This distinction presents a different question, namely whether a prior conviction, which is asserted to be based on a statute that has been subsequently declared facially unconstitutional, may nevertheless serve as proof of the predicate felony conviction in prosecuting the offense of UUW by a felon.

¶ 22    None of this court's existing precedent applying the void *ab initio* doctrine resolves this question. The United States Supreme Court, however, answered a similar question in the affirmative. In *Lewis v. United States*, 445 U.S. 55 (1980), the Court held that under a federal felon-in-possession-of-a-firearm statute, a constitutionally infirm prior felony conviction could be used by the government as the predicate felony. *Id.* at 65. The statute "prohibit[ed] a felon from possessing a firearm despite the fact that the predicate felony may be subject to

collateral attack on constitutional grounds." *Id.* The *Lewis* Court rejected the petitioner's ability to challenge, in the federal proceeding, the use of his uncounseled state felony conviction as the basis for his federal prosecution for being a felon in possession of a firearm. *Id.* at 67.

¶ 23 To answer the question presented, the Court examined the language of the federal firearms statute and concluded that "[t]he statutory language is sweeping, and its plain meaning is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action." *Id.* at 60-61. The Court "view[ed] the language Congress chose as consistent with the common-sense notion that a disability based upon one's status as a convicted felon should cease only when the conviction upon which that status depends has been vacated." *Id.* at 61 n.5. The Court noted that the federal firearms statute contained "[n]o exception *** for a person whose outstanding felony conviction ultimately might turn out to be invalid for any reason." *Id.* at 62. The legislature intended that "the defendant clear his status *before* obtaining a firearm," in keeping with Congress's purpose to keep firearms away from persons who are potentially irresponsible and dangerous. (Emphasis in original.) *Id.* at 64-65.

¶ 24 Thus, under *Lewis* and its progeny, the fact of a felony conviction without any intervening vacatur or other affirmative action to nullify the conviction triggers the firearms disability. *Id.* at 60-61. See, *e.g.*, *United States v. Mayfield*, 810 F.2d 943, 945-46 (10th Cir. 1987) (affirming federal firearms conviction even though state predicate conviction may have been void for lack of jurisdiction under state law); *People v. Chambers*, 922 F.2d 228, 238-40 (5th Cir. 1991) (even where predicate felony was subject to nullification on collateral attack, it was nevertheless a conviction for purposes of federal firearms statute); *United States v. Padilla*, 387 F.3d 1087, 1092 (9th Cir. 2004) (even where predicate felony was subsequently vacated *nunc pro tunc*, such conviction must be invalidated before felon takes possession of firearm; later relief will not invalidate federal felon-in-possession conviction); *United States v. Leuschen*, 395 F.3d 155, 157-59 (3d Cir. 2005) (holding that the federal felon-in-possession statute precluded the defendant's collateral attack on a prior conviction irrespective of validity of that conviction, even where defendant claimed the law had been amended prior to trial). In particular, in *United States v. Wallace*, 280 F.3d 781, 784 n.1 (7th Cir. 2002), the Seventh Circuit affirmed the defendant's conviction as a felon in possession despite the fact that the basis for his felon status was premised on a statute that was void *ab initio*. The court relied on the fact that the defendant pled guilty to the UUW by a felon offense and could not challenge that admission. *Id.* at 784. However, the court also noted that the defendant's argument lacked merit in any event, reaffirming the principles in *Lewis* "despite different permutations of the [defendant's] change in status regarding the predicate felony." *Id.* at 784 n.1. The court reiterated that those cases reinforced the "straightforward principle that the only relevant question is the defendant's status at the time he was charged with unlawfully possessing a firearm." *Id.*

¶ 25 The State maintains that like the federal statute, under Illinois's UUW by a felon statute, a defendant's felon status is determined at the time of the firearms possession and his disability ceases only when the prior conviction has been properly vacated. Thus, the fact that a prior felony conviction may subsequently turn out to be invalid for any reason and subject to vacatur under the void *ab initio* doctrine is not relevant for purposes of proving the elements of the separate offense of UUW by a felon.

¶ 26      We agree that the resolution of the question before us requires us to first consider the language of section 24-1.1(a), the controlling statute under which defendant was convicted in 2008. 720 ILCS 5/24-1.1(a) (West 2008). The interpretation of a statute presents a question of law, subject to *de novo* review. *People v. Simpson*, 2015 IL 116512, ¶ 29. Our primary objective is to ascertain and give effect to the true intent of the legislature. *Id.* This inquiry starts with the plain language of the statute, which is the most reliable indicator of legislative intent. *Id.* In determining the plain meaning of the statute, we may also consider "the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *People v. Gutman*, 2011 IL 110338, ¶ 12. We presume that "the legislature did not intend to create absurd, inconvenient, or unjust results." *Id.*

¶ 27      The UUW by a felon statute prohibits the possession of a firearm by any person "if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2008). As previously explained, that language of the statute requires the State to prove only "the defendant's felon status." *Walker*, 211 Ill. 2d at 337. Contrary to the appellate court's finding, the statute does not require the State to prove the predicate offense at trial. Additionally, the proscription under section 24-1.1(a) is expressed in the past tense, thus applying to any person who "has been convicted" of a felony (720 ILCS 5/24-1.1(a) (West 2008)). Nothing on the face of the statute suggests any intent to limit the language to only those persons whose prior felony convictions are not later subject to vacatur.

¶ 28      We see no reason to treat the interpretation of section 24-1.1(a) differently than the Supreme Court's interpretation of the similar federal statute in *Lewis*. Although the Supreme Court's construction of a federal statute is not binding on Illinois courts in construing an Illinois statute, the Supreme Court's interpretation of a similar federal statute may provide guidance in interpreting our own statute. *Gutman*, 2011 IL 110338, ¶ 17.

¶ 29      As with the federal statute, the language of section 24-1.1(a) is "consistent with the common-sense notion that a disability based upon one's status as a convicted felon should cease only when the conviction upon which that status depends has been vacated." *Lewis*, 445 U.S. at 61 n.5. The purpose of the statute, like the federal prohibition, is to protect the public from persons who are potentially irresponsible and dangerous. *People v. Garvin*, 2013 IL App (1st) 113095, ¶ 14. Thus, under section 24-1.1(a), it is immaterial whether the predicate conviction "ultimately might turn out to be invalid for any reason." *Lewis*, 445 U.S. at 62. Moreover, as with the federal statute, the UUW by a felon statute is not concerned with prosecuting or enforcing the prior conviction. Rather, the legislation is concerned with "the role of that conviction as a disqualifying condition for the purpose of obtaining firearms." *Mayfield*, 810 F.2d at 946. Accordingly, based on the plain wording of this particular statutory scheme, the UUW by a felon offense is a status offense, and the General Assembly intended that a defendant must clear his felon status before obtaining a firearm.

¶ 30      Moreover, the policy and purpose of the UUW by a felon statute are served by requiring an individual to clear his felony record before possessing a firearm, "no matter what infirmity infects his conviction." *Padilla*, 387 F.3d at 1091. As one jurisdiction aptly pointed out, a defendant "may not resort to self help by first obtaining and possessing [a] firearm, and thereafter try[ing] to assert the invalidity of the prior conviction as a defense to a [UUW by a felon] prosecution." *People v. Harty*, 219 Cal. Rptr. 85, 88 (Cal. App. 1985). Additionally

illustrative of the policy and purpose of the statute is *Clark v. State*, 739 P.2d 777 (Alaska Ct. App. 1987), where the Alaska court explained:

> "It appears to us that sound policy supports what we perceive to be the intent of the legislature. *** We see no reason why the legislature would want to encourage a person who has formerly been convicted of a felony to gamble by possessing a concealable firearm, hoping that if he or she is arrested for being a felon in possession that he or she can defend against that offense by having the former conviction set aside." *Id.* at 781.

There is nothing absurd or unjust or unreasonable about requiring a person who believes he has been wrongly convicted of a felony to clear his status through the judicial process before being allowed to possess a firearm. The UUW by a felon statute represents a considered and deliberate decision to require that a prior felony conviction be vacated or expunged before a firearm is possessed.

¶ 31    It is axiomatic that no judgment, including a judgment of conviction, is deemed vacated until a court with reviewing authority has so declared. As with any conviction, a conviction is treated as valid until the judicial process has declared otherwise by direct appeal or collateral attack. Although *Aguilar* may provide a basis for vacating defendant's prior 2002 AUUW conviction, *Aguilar* did not automatically overturn that judgment of conviction. Thus, at the time defendant committed the UUW by a felon offense, defendant had a judgment of conviction that had not been vacated and that made it unlawful for him to possess firearms.

¶ 32    This case in particular highlights the importance of having the judgment of conviction vacated before possessing a firearm. Although for purposes of this appeal, the State does not dispute that defendant's 2002 conviction is premised on an unconstitutional statute, the record does not confirm defendant's assertion. The indictment for the 2008 UUW by a felon offense does not identify the specific nature of the 2002 predicate AUUW offense under which defendant pleaded guilty. Rather, it alleges that defendant had a felony conviction for "[AUUW] under case number 02CR-30903." Furthermore, the records submitted by defendant in his appendix to his supplemental appellate brief in support of his argument that his conviction was unconstitutional fall outside the certified record of the proceedings. Even if considered, they provide no more clarity.

¶ 33    The indictment in the 02CR 30903 case reflects six separate charges of AUUW based on two separate guns, under various subsections of the statute, including the fact that defendant was under 21 at the time he possessed the firearms and lacked a FOID card. The record further indicates that defendant pleaded guilty in case No. 02CR 30903 to one count of AUUW, but the record does not affirmatively reflect that defendant pleaded guilty under section 24-1.6(a)(1), (a)(3)(A), the only section held unconstitutional in *Aguilar*. The record does not contain the plea colloquy or the factual basis for that plea. Thus, had defendant properly sought to vacate his 2002 guilty plea before possessing a firearm, these issues could have been adequately considered and resolved in an appropriate proceeding.

¶ 34    Lastly, we reject defendant's undeveloped assertion that interpreting the UUW by a felon statute in line with the State's argument would lead to a violation of due process or would violate second amendment rights. Statutes are presumed to be constitutional, and we have a duty to uphold the constitutionality of a statute whenever reasonably possible. *Mosley*, 2015 IL 115872, ¶ 40. The party challenging the constitutionality of the statute has the burden to prove

its invalidity. *Id.* As stated in *Lewis*, with respect to due process, the legislature "could rationally conclude that any felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm." *Lewis*, 445 U.S. at 66. As explained, nothing in the UUW by a felon statute prevents a defendant who believes his prior conviction is invalid from seeking a remedy for the deprivation of a guaranteed right. The remedy is to challenge the judgment of conviction and have the unlawful judgment of conviction set aside before deciding to possess a firearm.

¶ 35     With respect to the second amendment, in its normal application, the UUW by a felon statute is a presumptively lawful "longstanding prohibition[ ] on the possession of firearms." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). In *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626), the Court reiterated that "[w]e made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.' " See also *Burns*, 2015 IL 117387, ¶ 29 (indicating that the legislature can constitutionally prohibit felons from carrying readily accessible firearms outside the home).

¶ 36     Nevertheless, defendant appears to mount an as-applied challenge, contending that it would violate the second amendment to apply the UUW by a felon statute to felons whose status derived from constitutionally protected conduct. We have previously stated that it would be improper for this court to render a decision on an as-applied challenge where there has been no evidentiary hearing and no findings of fact on that issue. *Mosley*, 2015 IL 115872, ¶ 47. In any event, defendant has not shown that his conduct was entitled to second amendment protections, which are held by "law-abiding, responsible citizens" for self-defense (*Heller*, 554 U.S. at 635), where he chose to possess a firearm, which he used to rob three victims at gunpoint, knowing that he had not vacated his prior felony conviction.

¶ 37     In sum, defendant may seek to vacate his prior 2002 conviction for AUUW under the void *ab initio* doctrine based on this court's declaration in *Aguilar*. Nevertheless, even if successful, that remedy would neither alter nor extinguish the requirement under section 24-1.1(a) that defendant clear his felon status before obtaining a firearm. Accordingly, for all of the foregoing reasons, defendant's prior conviction properly served as proof of the predicate felony conviction for UUW by a felon.

¶ 38                                    2. Cross-Relief

¶ 39     In his cross-appeal, defendant contends that the appellate court erred when it ruled that his 29-year concurrent sentences for the armed robberies need not be remanded for resentencing. In the appellate court, defendant argued that his concurrent 29-year sentences for armed robbery were excessive and that the appellate court should consider that without his prior AUUW conviction he had only one prior felony conviction in his background.

¶ 40     Defendant now contends that the appellate court failed to consider that had the trial court been aware that his 2002 AUUW conviction was unconstitutional, and that he had fewer convictions, the trial court would have likely sentenced him to less than the concurrent 29-year sentences for the armed robberies of the three victims. Accordingly, defendant asks this court to either reduce his sentences from 29 years to the minimum available sentence of 21 years or alternatively to remand for resentencing.

¶ 41    We reiterate that the constitutional invalidity of defendant's 2002 AUUW conviction is not confirmed by the record in this case. Nevertheless, even if it was constitutionally infirm, the record adequately demonstrates that the weight placed on the 2002 AUUW conviction was not significant and did not warrant a new sentencing hearing. Nor has defendant shown that the one count of UUW by a felon that the appellate court vacated based on the one-act, one-crime doctrine had any effect on his armed robbery sentence. *People v. Payne*, 98 Ill. 2d 45, 55 (1983) (resentencing unnecessary unless record indicates a vacated conviction had effect on the other sentences).

¶ 42    In support of his argument, defendant relies on the trial court's statement in sentencing; the nature of the offense; the mitigation regarding defendant's childhood, mental health problems, and drug and alcohol addiction; and his rehabilitative potential. He also relies upon *United States v. Tucker*, 404 U.S. 443 (1972). There, the federal district court expressly considered two particular prior felony convictions in sentencing that were unconstitutional, and the Supreme Court remanded for a new sentencing hearing. *Id.* at 447. In that case, the Court believed that without the convictions, "the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding." *Id.* at 448.

¶ 43    Here, in sentencing defendant, the trial court recognized defendant's difficult childhood, his past drug and mental health issues, and his rehabilitative potential. The court specifically noted that he "showed some insight," in expressing remorse and taking responsibility for his actions. The judge noted that "[i]f I could forget everything else, it would be great. Unfortunately, you know, you come here with your history, your criminal history, you come here with the facts of this case, all of which this Court has a responsibility to take into consideration." We disagree with defendant's assertion that this case warrants a remand for a new sentencing hearing.

¶ 44    With respect to his criminal history, the trial court did not point to any one prior conviction but, rather, referenced generally his "criminal history" as a factor in sentencing. Defendant's criminal record is extensive. The record reveals that defendant not only violated the terms of his probation for the 2002 AUUW offense, his probation was ultimately terminated unsatisfactorily for that offense, and then he went on to continue to commit other crimes. Defendant had a juvenile disposition for aggravated battery and convictions for battery, resisting arrest, aggravated assault, criminal trespass to a vehicle, assault, theft, driving while under the influence, and possession of a controlled substance with the intent to deliver. In addition, the presentence investigation report revealed that defendant was a "three-star universal" in the Conservative Vice Lords gang, which he joined at the age of 11. The State explained that this title applies to the violent enforcer who is tasked with securing the gang's territory.

¶ 45    With respect to the nature of the armed robberies, the court considered that defendant committed armed robberies against three victims during a single 24-hour period. During one of the robberies, defendant held a gun to one victim's neck, and after obtaining his wallet and cell phone and the other victim's cell phone, he returned, again holding the gun to the victim's neck, and demanded more money. Later that day, defendant grabbed another victim's shoulder, pushed him into a fence, and held a gun to his sternum. After obtaining only a few dollars, a cell phone, and a wallet, defendant told the victim, "I could have shot you for that."

The victim testified that the gun was at his chest throughout the robbery and that he was afraid that defendant would shoot him.

¶ 46 Furthermore, armed robbery is a Class X offense punishable by not less than 6 years and not more than 30 years' imprisonment. 730 ILCS 5/5-4.5-25(a) (West 2008). The trial court imposed a 14-year sentence on the armed robbery counts, to which the 15-year enhancement was added because defendant used a firearm during the commission of the offenses. 720 ILCS 5/18-2(b) (West 2008). Thus, defendant's concurrent sentences for committing armed robberies against three victims were 16 years below the maximum sentences permissible for those offenses. Based on this record, we conclude that a remand for resentencing on his armed robbery convictions is not required.

¶ 47                                   CONCLUSION

¶ 48 We hold that under the UUW by a felon statute, defendant's felon status at the time of the offense properly served as sufficient proof of the predicate felony conviction. Additionally, we reject defendant's assertion that the trial court's imposition of concurrent 29-year prison terms for his armed robbery convictions requires a sentencing reduction or remand for a new sentencing hearing. Accordingly, for all of the foregoing reasons, we affirm the judgment of the appellate court in part and reverse in part.

¶ 49 Appellate court judgment affirmed in part and reversed in part.

¶ 50 Circuit court judgment affirmed in part and vacated in part.

¶ 51 JUSTICE KILBRIDE, concurring in part and dissenting in part:

¶ 52 The majority chooses to define the question in this case as "whether a prior conviction, which is asserted to be based on a statute that has been subsequently declared facially unconstitutional, may nevertheless serve as proof of the predicate felony conviction in prosecuting the offense of UUW by a felon." *Supra* ¶ 21. In light of this court's longstanding precedent on the void *ab initio* doctrine, however, the question is actually whether a conviction for UUW by a felon may be predicated on a prior conviction for a felony that could never have been validly established or prosecuted. The majority answers that question in the affirmative. I respectfully dissent from that view.

¶ 53 When a statute is held facially unconstitutional, *i.e.*, unconstitutional in all its applications (see *In re Rodney H.*, 223 Ill. 2d 510, 521 (2006)), the statute is said to be void *ab initio*. *Lucien v. Briley*, 213 Ill. 2d 340, 344-45 (2004); *Hill v. Cowan*, 202 Ill. 2d 151, 156 (2002); see also *People v. Gersch*, 135 Ill. 2d 384, 390 (1990) (" '[w]hen a statute is held unconstitutional in its entirety, it is void *ab initio*' " (quoting *People v. Manuel*, 94 Ill. 2d 242, 244-45 (1983))); *Perlstein v. Wolk*, 218 Ill. 2d 448, 455 (2006) (an unconstitutional statute is void "from the beginning"). The void *ab initio* doctrine is based on the theory that " '[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.' " (Internal quotation marks omitted.) *People v. Blair*, 2013 IL 114122, ¶ 28 (quoting *Perlstein*, 218 Ill. 2d at 454). These principles have long been strictly applied in our criminal jurisprudence. *Perlstein*, 218 Ill. 2d at 466-67; *Gersch*, 135 Ill. 2d at 396-401.

¶ 54    As the majority notes, "[t]he UUW by a felon statute makes it unlawful for a person to knowingly possess a firearm 'if the person has been convicted of a felony under the laws of this State or any other jurisdiction.' " *Supra* ¶ 14 (quoting 720 ILCS 5/24-1.1(a) (West 2008)). The majority then implies, without concluding, that defendant's stipulation of his felon status "precluded [him] from attacking or contradicting [that] stipulation" (*supra* ¶ 15 (citing *People v. Woods*, 214 Ill. 2d 455, 469 (2005))). *Woods* is inapt because the defendant there challenged only the evidence of the State's chain of custody after having entered into a trial stipulation as to the narcotics found. *Woods*, 214 Ill. 2d at 462-66; *supra* ¶ 15. Constitutional questions were never at issue. Finally, the majority addresses defendant's substantive claim under the void *ab initio* doctrine. It relies on two cases purportedly addressing "a similar question," *Lewis v. United States*, 445 U.S. 55 (1980), and *United States v. Wallace*, 280 F.3d 781, 784 n.1 (7th Cir. 2002). *Supra* ¶¶ 22-34. With *Lewis* and *Wallace*, the majority misses the mark.

¶ 55    In *Lewis*, the United States Supreme Court considered whether a federal felon-in-possession conviction could be based on a prior felony conviction obtained without counsel or a valid waiver of counsel, in violation of the sixth amendment to the United States Constitution. It is worth noting that the Supreme Court never used the term "void *ab initio*" in its discussion. The absence of any mention of that term is understandable, however, because the void *ab initio* doctrine was inapplicable; no statute was held facially unconstitutional in *Lewis*. The Court ultimately concluded that the defendant could be convicted of unlawfully possessing a gun due to his status as a felon even when his prior felony conviction violated his sixth amendment rights. *Lewis*, 445 U.S. at 67.

¶ 56    In this court, a sixth amendment violation would not have supported a void *ab initio* finding either. In *Lewis*, the defendant's predicate felony remained a valid offense, and a properly tried defendant could still be convicted on that charge. The opposite is true in this case. Contrary to the majority's description, the issues in *Lewis* and this case are "similar" only at the most superficial level.

¶ 57    While at first blush this case may appear to be similar to *Lewis* because both involve defendants' challenges to the use of unconstitutional prior felony convictions as predicate felonies in later felon-in-possession prosecutions, that illusion fades rapidly in the light of serious legal scrutiny. In *Lewis*, the constitutional error occurred as part of the trial process; *the predicate offense always remained valid*. Here, in stark contrast to *Lewis*, this court invalidated the predicate offense in its entirety in *Aguilar*, 2013 IL 112116, ¶ 22, concluding it was a facial violation of "the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution."

¶ 58    As the majority explains, under our void *ab initio* doctrine, the invalidated AUUW statute was rendered

> "void ' "from the beginning." ' *Perlstein v. Wolk*, 218 Ill. 2d 448, 455 (2006) (quoting Black's Law Dictionary 1604 (8th ed. 2004)); *Hill v. Cowan*, 202 Ill. 2d 151, 156 (2002) (limiting the doctrine to facially unconstitutional statutes). A declaration that a statute is void *ab initio* means that the statute was constitutionally infirm from the moment of its enactment and, therefore, is unenforceable. *People v. Blair*, 2013 IL 114122, ¶ 30." *Supra* ¶ 17.

Thus, after our decision in *Aguilar*, as clarified in *People v. Burns*, 2015 IL 117387, the offense used as the predicate felony for the UUW by a felon charge in this case "was constitutionally

infirm" when it was enacted and must be treated as if its underlying statute was never operative.

¶ 59     In addition, the majority relies on the Seventh Circuit Court of Appeals decision in *Wallace*. The Seventh Circuit described Wallace's conviction for unlawful use of a weapon as being "vacated as *void ab initio* when the Supreme Court of Illinois ruled that the Act that had transformed the unlawful use of weapon ('UUW') charge from a misdemeanor to a felony violated the Illinois Constitution." *Wallace*, 280 F.3d at 782-83 (citing *People v. Cervantes*, 189 Ill. 2d 80 (1999)). The constitutional violation in *Cervantes*, however, was of the Illinois Constitution's single-subject clause (Ill. Const. 1970, art. IV, § 8(d)). *Cervantes*, 189 Ill. 2d at 93-96. That violation was based on the constitutionally invalid structure of the public act and did not independently consider the constitutional validity of any one provision within that public act. *Cervantes* did not declare the very heart of a particular provision facially unconstitutional, as did our holding in *Aguilar*.

¶ 60     In fact, a close reading of *Cervantes* reveals it, like *Lewis*, never used the term "void *ab initio*," underscoring its inapplicability. Moreover, the circuit court in *Wallace* corrected the defendant's improper felony conviction by entering "a misdemeanor conviction *nunc pro tunc*" for the offense. *Wallace*, 280 F.3d at 783. The fact that Wallace could still be convicted of the misdemeanor form of that offense *at all* after this court's decision in *Cervantes* indicates that this court did not declare the criminal statute void *ab initio*. If we had, the entire offense would have ceased to exist, and Wallace's conviction would have been vacated outright. Thus, respectfully, the Seventh Circuit mischaracterized the impact of this court's decision in *Cervantes*, rendering *Wallace* inapposite here.

¶ 61     This court has also held that the effect of the void *ab initio* doctrine is necessarily retroactive, applying universally to unwind *every* conviction ever obtained under section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute because " '[t]o hold that a judicial decision that declares a statute unconstitutional is not retroactive would forever prevent those injured under the unconstitutional legislative act from receiving a remedy for the deprivation of a guaranteed right. This would clearly offend all sense of due process.' " *Supra* ¶ 18 (quoting *Gersch*, 135 Ill. 2d at 397-98). See also *People v. Thompson*, 2015 IL 118151 (permitting facial constitutional challenges to be raised even collaterally in petitions filed pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010))). Based on the need to vindicate a criminal "defendant's constitutionally guaranteed rights," we have mandated "strict application" of the void *ab initio* doctrine in criminal cases despite its potentially far-reaching consequences. *Perlstein*, 218 Ill. 2d at 466-67. Because of its fundamental constitutional flaw, the relevant portion of the AUUW statute is utterly unenforceable. Consequently, *no one* may be, or has ever been, validly convicted under that subsection.

¶ 62     Despite openly acknowledging the critical role the void *ab initio* doctrine plays in our state jurisprudence, the majority nevertheless concludes that defendants may obtain retroactive relief from a criminal statute declared to be facially unconstitutional *only* by first jumping through prescribed procedural hoops. The majority requires defendants not only to request, but also to obtain, official vacatur of their convictions *for their non-offenses* prior to engaging in constitutionally protected conduct, including expression of their fundamental second amendment rights, or face yet another felony conviction and sentence.

¶ 63    This court has expressly recognized the fundamental nature of an individual's right to keep and bear arms. *Coram v. State of Illinois*, 2013 IL 113867, ¶ 49 (quoting *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 778 (2010)); *Aguilar*, 2013 IL 112116, ¶ 17 (quoting *McDonald*, 561 U.S. at 749-50). I fail to see how placing these additional burdens on defendants who have already been harmed by suffering felony prosecutions for offenses so grievously flawed that they cannot be validly applied in even a single instance comports with any "sense of due process." See *supra* ¶ 18 (quoting *Gersch*, 135 Ill. 2d at 397-98 (declaring that the conclusion that the unconstitutionality of a statute is not retroactive " 'would clearly offend all sense of due process' ")).

¶ 64    Moreover, the majority's position raises more practical questions, and those answers further heighten the likelihood of the State again meting out injustice to defendants who have already been the unwitting victims of misplaced criminal prosecutions and, undoubtedly in many cases, years lost in prison. These questions include: how and, perhaps more importantly, when would these individuals discover they are the victims of an inherently unconstitutional legislative act? What, if any, mechanism is in place to notify those "convicted" of criminal statutes later determined to be so profoundly flawed that each and every prosecution ever conducted is invalid? I am aware of none. Virtually the only time individuals "convicted" under any criminal statute later declared void *ab initio* would realistically become aware of their plight would be after being charged with another criminal offense.

¶ 65    In the majority's view, however, their fate has already been sealed at that point. According to the majority, they cannot simply, and logically, rely on the utter invalidity of their purported prior offense to provide a remedy. See *supra* ¶¶ 29-32. And why not? Merely because they acted too late to seek official vacatur of convictions that they had no reason to even suspect were fatally and irreparably flawed. Once again, I fail to see how the majority's approach comports with any "sense of due process." See *supra* ¶ 18 (declaring that a decision holding the unconstitutionality of a statute is not retroactive " 'would clearly offend all sense of due process' " (quoting *Gersch*, 135 Ill. 2d at 397-98)).

¶ 66    The majority also cites the purpose of the UUW by a felon statute: "to protect the public from persons who are potentially irresponsible and dangerous." *Supra* ¶ 29. But because not a single AUUW conviction ever obtained under section 24-1.6(a)(1), (a)(3)(A) can properly stand after *Aguilar* and *Burns*, those convicted under that provision cannot rightfully be lumped together with defendants whose prior convictions justify deeming them presumptively "irresponsible and dangerous." The contrary conclusion would effectively mean the mere exercise of citizens' fundamental second amendment rights renders them "irresponsible and dangerous," a clearly erroneous result that contradicts our plain holding in *Aguilar* and its progeny. And if, as in this case, a defendant has other prior felony convictions befitting the use of that description, the State may be entitled to refile charges of UUW by a felon based on the alternative prior conviction. Thus, the public can be protected without unnecessarily trampling citizens' second amendment rights.

¶ 67    While the majority makes much of a defendant's "felon status" (*supra* ¶¶ 24-30), its view places form over constitutional substance and is fundamentally inconsistent with this court's historical explanation of its strict application of the void *ab initio* doctrine in criminal cases. At the time defendant received his 2002 AUUW felony conviction, the parties and trial court all labored under the mistaken, though entirely understandable, belief that his conviction made

him a felon. Only after this court examined that AUUW provision in *Aguilar* and determined it could not be validly applied under *any* set of circumstances did that error become self-evident. If this court truly means what it says about the void *ab initio* doctrine, no defendant can properly be prosecuted for violating the onerous restrictions imposed on the constitutional rights of those officially bearing "felon status," if that "felony" effectively never existed. The injustice resulting from subjecting those defendants to further criminal prosecutions based on convictions for an offense that could never have been validly charged in the first place simply because they have not already officially shed their status as a "felon" is manifest.

¶ 68        In its analysis, the majority opinion also shifts the focus from the plain language of the UUW by a felon statute to the defendant's "status" as a felon. Under the express language of the UUW by a felon statute, however, the State must prove that a defendant knowingly possessed a firearm while "convicted of a felony under the laws of this State." 720 ILCS 5/24-1.1(a) (West 2008). It does not require proof of the defendant's "felon status." The AUUW conviction specified in the charging instrument for the State's UUW by a felon count could *not* be established here because, under this court's void *ab initio* doctrine, the underlying statute was invalid from the day of its enactment. *People v. Mosley*, 2015 IL 115872, ¶ 55; *Blair*, 2013 IL 114122, ¶ 30.

¶ 69        These circumstances create a situation somewhat akin to mutual mistake. At the time of the pre-*Aguilar* UUW by a felon proceedings, both the State and defendant believed the prior AUUW constituted a valid felony conviction. Only after this court's holding in *Aguilar* did the error come to light. The impact of that holding was that, without exception, *every AUUW conviction ever entered under that section was immediately invalid and unenforceable*. See *Thompson*, 2015 IL 118151, ¶ 32; *People v. Blair*, 2013 IL 114122, ¶ 30. After all, what is a conviction if not the enforcement of a criminal statute? Logic and fundamental fairness mandate that no person can be constitutionally convicted of an offense that could never be validly created or prosecuted. It is a legal impossibility. See *People v. Hayes*, 365 Ill. 318, 322 (1937) (concluding embezzlement was a physical and legal impossibility when the paper warrants at issue were void). The application of these bedrock principles precludes defendant from being convicted of UUW by a felon based on his *facially unconstitutional* 2002 AUUW "conviction."

¶ 70        The majority's contrary holding seriously undermines this court's void *ab initio* doctrine, effectively making convictions for offenses later declared facially unconstitutional merely voidable. At best, the majority appears to be manufacturing an undefined exception to that doctrine. That exception effectively creates a grace period for unconstitutional legislation that could last for over a decade, as in this case, and affect vast numbers of people. During that time, our citizens' most basic constitutional rights, including the fundamental right to keep and bear firearms, may be violated with impunity. The cost to the citizens of Illinois is simply too high. See *People v. Krueger*, 175 Ill. 2d 60, 75 (1996) (expressing similar sentiments in the context of this state's exclusionary rule).

¶ 71        At a minimum, this court's diversion from its longstanding "strict application" of the void *ab initio* doctrine in criminal cases (*Perlstein*, 218 Ill. 2d at 466-67) should be done expressly and with special justification for its departure from *stare decisis*. *People v. Colon*, 225 Ill. 2d 125, 146 (2007). Instead, the majority opinion incongruously asserts that it "continue[s] to reaffirm the principle that the void *ab initio* doctrine renders a facially unconstitutional statute

unenforceable and renders a conviction under that facially unconstitutional statute subject to vacatur." *Supra* ¶ 20.

¶ 72    Imposing the prerequisite of a prior official vacatur of a conviction for a crime that could never be validly prosecuted before an individual is absolved of the full criminal consequences of his "felony conviction" is manifestly unjust and creates an absurd result. That is particularly true when, through no fault of his own, the individual is almost certainly never going to become aware of the opportunity to have his conviction vacated until after being held on another charge. Undoubtedly, some, if not many, of these individuals will have no prior offenses other than the one declared to be facially unconstitutional, yet all will be subject to additional charges, punishments, and lifelong restrictions on their basic rights under the majority's view. Rather than support the interests of justice, the majority "would forever prevent those injured under the unconstitutional legislative act from receiving a remedy for the deprivation of a guaranteed right. This would clearly offend all sense of due process." *Gersch*, 135 Ill. 2d at 397-98.

¶ 73    As we clearly explained in *Gersch*, "where a statute is violative of constitutional guarantees, we have a duty not only to declare such a legislative act void, but also to correct the wrongs wrought through such an act by holding our decision retroactive." *Gersch*, 135 Ill. 2d at 399. For these reasons, I must dissent from the portion of the majority opinion upholding defendant's conviction for UUW by a felon premised on a prior felony that could never be validly prosecuted. I agree, however, with the majority's disposition of defendant's cross-appeal and concur in that portion of the opinion.

¶ 74    JUSTICE BURKE joins in this partial concurrence, partial dissent.