2022 IL App (1st) 210128-U

SIXTH DIVISION
April 8, 2022

No. 1-21-0128

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 13 CR 09548 |
| | ) | |
| ENOCH JACKSON, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Petitioner-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Pierce and Justice Harris concurred in the judgment.

**O R D E R**

¶ 1    *Held*:    The summary dismissal of defendant's postconviction petition is reversed and the cause is remanded for second-stage proceedings where defendant presented the gist of a constitutional claim that he received ineffective assistance of appellate counsel based on appellate counsel's failure to raise on appeal the trial court's consideration of a void conviction at sentencing.

¶ 2    Defendant Enoch Jackson appeals from the summary dismissal of his *pro se* postconviction petition. Mr. Jackson argues that he raised the gist of a constitutional claim when he alleged that his appellate counsel was ineffective for failing to raise on direct appeal the trial court's consideration of a void conviction for aggravated unlawful use of a weapon (AUUW) at

sentencing. For the reasons that follow, we reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      Mr. Jackson was charged and convicted of the murder of Darius Hartfield, who was killed in a shooting on Chicago's south side on the evening of November 28, 2012. As Mr. Jackson challenges his sentence and not his conviction, our summary of the trial record will be relatively brief. We provided a fuller recitation of the trial facts in our decision on direct appeal in *People v. Jackson*, 2020 IL App (1st) 162688-U.

¶ 5                                    A. The Trial

¶ 6      The evidence at Mr. Jackson's trial "established that the shooting took place near 69th Street and Ridgeland Avenue, where Mr. Hartfield was found near a red Ford Taurus with a 'broken window and bullet holes' on the side." *Id.* ¶ 7. "No gun was recovered but forensic examiners testified that the bullets and shell casings recovered were fired by the same weapon." *Id.*

¶ 7      The State called several witnesses, including Cordell Armstead, an eyewitness to the aftermath of the shooting, Malik Williams, the police officer who responded to the scene, and David March, the detective assigned to the case. The State also called Tiara Harman, a long-time romantic partner of Mr. Jackson's and the mother of his child. Ms. Harman provided the most compelling testimony.

¶ 8      She testified that during a phone call with Mr. Jackson on December 5, 2012, he mentioned that he had shot someone "about a week before." Unsettled by the conversation, Ms. Harman, who now lived in Minnesota, decided to report it to local law enforcement, which in turn reached out to Detective March in Chicago. Detective March then contacted Ms. Harman and got her to agree to record her future conversations with Mr. Jackson using an application on her cellphone, which

she did on five occasions. In these recordings, some of which were played for the jury, Mr. Jackson made several statements essentially admitting that he shot Mr. Hartfield. See *id.* ¶¶ 11-12. He also claimed in one of the recorded calls that his cousin's girlfriend, Jennifer Ratley, had disposed of all the physical evidence from the shooting. *Id.*

¶ 9    Defense counsel called two witnesses, Jennifer Ratley and Mr. Jackson's mother, Anica Jackson. Ms. Ratley denied any involvement in the shooting and claimed that she never received any physical evidence from Mr. Jackson, contrary to what he had stated in one of the recorded phone calls. Ms. Jackson testified generally to her son's mental state. She explained that her son's strained relationship with Ms. Harman had left him "really depressed" and that she feared he might hurt himself. Mr. Jackson declined to testify.

¶ 10   The jury found Mr. Jackson guilty of first degree murder and further found that he had personally discharged a firearm during the commission of the offense. He filed a motion for judgment notwithstanding the verdict and a motion for a new trial, both of which were denied.

¶ 11                                    B. Sentencing

¶ 12   At the sentencing hearing, the State read a victim impact statement written by the deceased's mother. Then, alluding to a prior AUUW charge in Mr. Jackson's record, the State argued in aggravation that Mr. Jackson "has had contact with weapons in the past, as [the court] knows from his conviction for a gun previously." The State concluded by asking the court to sentence Mr. Jackson to more than the minimum sentence, which in this case meant more than 45 years.

¶ 13   In mitigation, defense counsel noted that this was Mr. Jackson's first and only violent conviction. He had no juvenile record to speak of and members of his family could attest that he was a good son and that there was nothing in his background that "demonstrate[d] that he [wa]s a

horrible person." Defense counsel then asked for the minimum sentence.

¶ 14    The court sentenced Mr. Jackson to 48 years, explaining that its determination was based on "the presentence investigation; the evidence presented at the trial; and also the facts, the arguments, and the evidence presented in aggravation and mitigation at the sentencing; and also the victim impact statement; and the statutory provisions for aggravation and the statutory provisions for mitigation; and also *** Mr. Jackson's ability to be rehabilitated." Mr. Jackson's motion to reconsider the sentence was denied.

¶ 15                                C. Direct Appeal

¶ 16    On direct appeal, Mr. Jackson argued that "the trial court committed plain error by failing to properly admonish the jury as required by Supreme Court Rule 431(b) (eff. July 1, 2012)." *Id.* ¶ 2. We affirmed his conviction, holding that Mr. Jackson forfeited his claim "by failing to object to the admonishments at trial" and failed to show that the evidence was closely balanced "such that it rose to the level of first-prong plain error." *Id.*

¶ 17                         D. Postconviction Proceedings

¶ 18    Mr. Jackson filed a *pro se* postconviction petition on August 26, 2020. He raised several issues in his petition, but the only one relevant to this appeal was his ineffective assistance of appellate counsel claim. As explained in his opening brief, he alleged in his petition "that his appellate counsel was ineffective for failing to raise the argument that his prior AUUW conviction should not have been considered in aggravation during his sentencing hearing, because it was a void conviction."

¶ 19    On November 5, 2020, the circuit court summarily dismissed Mr. Jackson's petition. The court did not specifically address the void conviction argument, but it did comment more generally on the relevant burdens when alleging ineffective assistance of appellate counsel. The court

- 4 -

explained its reasoning as follows:

> "Here, the court declines to deem 'patently erroneous' appellate counsel's assessment of the record and decision not to raise those issues now asserted by petitioner. Moreover, petitioner has failed to establish that had appellate counsel raised any or all of the above listed issues, his conviction or sentence would have been reversed.
>
> ***
>
> Because the court has determined that the underlying claims of ineffectiveness lack support, petitioner's claims of ineffective assistance of appellate counsel likewise are without merit."

Mr. Jackson now appeals.

¶ 20                                    II. JURISDICTION

¶ 21    The circuit court dismissed Mr. Jackson's petition on November 5, 2020. On February 16, 2021, we allowed Mr. Jackson to file a late notice of appeal. We thus have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 606 (eff. July 1, 2017) and Rule 651(a) (eff. July 1, 2017), governing appeals from final judgments in postconviction proceedings.

¶ 22                                    III. ANALYSIS

¶ 23    On appeal, Mr. Jackson argues that the circuit court erred in summarily dismissing his petition, as he raised the gist of a constitutional claim when he alleged that his appellate counsel was ineffective for failing to raise on appeal the trial court's consideration of a void AUUW conviction at sentencing. The State responds that Mr. Jackson's petition was properly dismissed because his ineffective assistance of appellate counsel claim "had no basis in law or fact."

¶ 24    We review a summary dismissal of a postconviction petition *de novo* and can affirm on

any basis supported by the record. *People v. Allen*, 2015 IL 113135, ¶ 19.

¶ 25    The Post–Conviction Hearing Act (Act) (725 ILCS 5/122–1 *et seq.* (West 2022)) establishes procedures by which a criminal defendant may challenge his conviction or sentence based on a substantial deprivation of his state or federal constitutional rights. 725 ILCS 5/122–1(a)(1) (West 2022); *People v. Caballero*, 228 Ill. 2d 79, 83 (2008). Proceedings under the Act consist of three stages of review. *People v. Johnson*, 2018 IL 122227, ¶ 14. At the first stage, which is the stage at issue here, a defendant's petition need only state the "gist" of a valid constitutional claim. *People v. Bailey*, 2017 IL 121450, ¶ 18.

¶ 26    This is not a high hurdle. The circuit court may only dismiss a petition at this stage if it is "frivolous or patently without merit," meaning the petitioner's claims have "no *arguable* basis either in law or in fact." (Emphasis added.) *People v. Boykins*, 2017 IL 121365, ¶ 9. Our supreme court explained in *People v. Hodges*, 234 Ill. 2d 1, 16 (2009), that "[a] petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful allegation." "An example of an indisputably meritless legal theory is one which is completely contradicted by the record," while "[f]anciful factual allegations include those which are fantastic or delusional." *Id.* Additionally, where, as here, a postconviction petitioner is acting *pro se*, our supreme court instructs us to take pains to analyze their claims liberally, "with a lenient eye, allowing borderline cases to proceed." (Internal quotation marks omitted.) *Id.* at 21.

¶ 27    Here, Mr. Jackson is alleging ineffective assistance of appellate counsel. To ultimately prevail on that claim, Mr. Jackson will have to satisfy both prongs of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "Under that standard, a defendant must show both that the appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful." *People v. English*, 2013 IL

112890, ¶ 33.

¶ 28 This is a deferential standard. As our supreme court explains in *People v. Simms*, 192 Ill. 2d 348, 362 (2000), "[a]ppellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." But at the first stage, the postconviction system does not yet demand Mr. Jackson to present a fully developed claim. In other words, he does not need to show—at least, not yet—that he can *prevail* on his *Strickland* claim. Instead, at this preliminary stage, Mr. Jackson only needs to show that "(i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced." (Emphasis added.) *Hodges*, 234 Ill. 2d at 17. In our view, his claim clearly satisfies this burden.

¶ 29 By the time Mr. Jackson was sentenced in 2016, our supreme court had determined, in *People v. Aguilar*, 2013 IL 112116, ¶ 22, that the statute which gave rise to his AUUW conviction was facially unconstitutional. Additionally, nine months before Mr. Jackson filed his opening brief on direct appeal on May 22, 2019, our supreme court clarified that these void AUUW convictions could not be used for any purpose. *In re N.G.*, 2018 IL 121939, ¶ 74 ("using [such convictions] against a defendant in any subsequent proceeding, civil or criminal, is not only conceptually impossible *** but would subvert the very constitutional protection that resulted in the statute being found facially invalid to begin with and is incompatible with the United States Supreme Court's command that when *** the conduct penalized by a statute is constitutionally immune from punishment, that determination must be given complete retroactive effect.").

¶ 30 Here the State referred to Mr. Jackson's void conviction in its remarks before the sentencing judge, drawing the court's attention to Mr. Jackson's "contact with weapons in the

past." The void conviction was also included in the PSI. Mr. Jackson contends that "[b]y failing to argue that [his] AUUW conviction was void and should not have been considered at his sentencing hearing," his appellate counsel's performance "arguably fell below an objective standard of reasonableness." Mr. Jackson further alleges that his appellate counsel's failure to raise the issue arguably prejudiced him since he received more than the minimum sentence for his crime.

¶ 31    While the trial court never stated directly that it took this void conviction into account, the court explained that its sentencing decision was based in part on the PSI, which contained the void conviction, and on "the evidence presented in aggravation," which included the prosecutor's specific reference to the void conviction. As we have recognized, where it is "unclear" how the sentencing court considered the void AUUW conviction during sentencing, the case must be remanded for resentencing. *People v. Alexander*, 2019 IL App (3d) 170168, ¶ 40. Similarly, we have held that where the State relies on a void conviction as an aggravating factor in sentencing, it is "prudent" to remand for resentencing, even where other aggravating factors could explain the sentence imposed. *People v. Cross*, 2019 IL App (1st) 162108, ¶ 202.

¶ 32    The State concedes that, because Mr. Jackson's AUUW conviction was based on a statute that was later found unconstitutional, it should not have factored into his sentencing. However, the State insists that this case is analogous to *People v. Bridges*, 2020 IL App (1st) 170129, ¶ 38, where we found that the presence of a void AUUW conviction in the record did not affect the trial court's sentencing decision. We disagree.

¶ 33    In *Bridges*, the defendant argued, like Mr. Jackson, that the sentencing judge improperly considered a void AUUW conviction. *Id.* ¶ 35. While we agreed with the defendant that the AUUW conviction was void and incompetent evidence, we held that it was unnecessary to remand the case for resentencing because the court provided an extremely detailed and mathematical

explanation for its sentencing calculation which "clearly establishe[d] that defendant's AUUW conviction did not affect the trial court's sentencing decision." *Id.* ¶ 39. We cited both *Alexander* and *Cross* and explained that the *Bridges* case was different, concluding that "[t]he court's detailed and clear explanation of its sentencing decision refutes the otherwise eminently reasonable principle that we cannot presume in light of a sentence above the minimum that the void prior conviction had no effect." *Id.*

¶ 34    Here, in contrast to *Bridges,* there is no "detailed and clear explanation" by the sentencing court that makes it obvious that the void conviction was not considered. In the absence of such an explanation in the record, the "eminently reasonable principle" we described in *Bridges* is fully applicable and we must presume that the void conviction factored into the sentence imposed.

¶ 35    In our view, there is a reasonable probability that had his appellate counsel raised this issue, Mr. Jackson could have persuaded this court to order a new sentencing hearing, where his void AUUW conviction could not be considered. There is also a reasonable probability that this would have resulted in a shorter sentence, in light of Mr. Jackson's limited criminal record. On this basis, Mr. Jackson has stated the "gist" of a constitutional claim. The circuit court erred in dismissing his petition at the first stage.

¶ 36                             IV. CONCLUSION

¶ 37    For the foregoing reasons, we reverse the circuit court's summary dismissal of Mr. Jackson's *pro se* postconviction petition and remand for second-stage proceedings.

¶ 38    Reversed and remanded.