# Illinois Official Reports

## Appellate Court

---

### *People v. Bridges*, 2020 IL App (1st) 170129

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES BRIDGES, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-17-0129 |
| Filed<br>Rehearing denied | March 27, 2020<br>June 19, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-6007; the Hon. Stanley J. Sacks, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Adrienne N. River, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Cunningham and Connors concurred in the judgment and opinion. |

## OPINION

¶ 1      Following a 2016 jury trial, defendant James Bridges was convicted of armed robbery and aggravated kidnapping and sentenced to concurrent prison terms of 35 and 21 years. On appeal, defendant contends that (1) the trial court did not properly follow the three-stage procedure for evaluating *Batson* claims (see *Batson v. Kentucky*, 476 U.S. 79 (1986)) of racial discrimination in jury section, and (2) he should be resentenced for armed robbery because one of his prior convictions is void as facially unconstitutional. For the reasons stated below, we affirm the judgment herein and vacate the earlier conviction at issue.

### I. JURISDICTION

¶ 2

¶ 3      On April 22, 2016, a jury found defendant guilty of armed robbery and aggravated kidnapping. On December 16, 2016, the court sentenced defendant to concurrent prison terms of 35 and 21 years respectively, and he filed his notice of appeal. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017) governing appeals from a final judgment of conviction in a criminal case.

### II. BACKGROUND

¶ 4

¶ 5      Defendant was charged in relevant part with armed robbery while armed with a firearm (720 ILCS 5/18-2(a)(2) (West 2012)) against Anthony Claybourne and aggravated kidnapping while armed with a firearm (*id.* § 10-2(a)(6)) against Edward Hill, both allegedly committed on or about September 26, 2012.

### A. Jury Selection

¶ 6

¶ 7      At jury selection, after 14 prospective jurors were examined and the State spread of record the criminal histories of certain veniremen, one was stricken for cause without objection. The State exercised one peremptory challenge for Daniel Wilson, to which defendant objected under *Batson* and sought an explanation for the challenge. The court noted that defendant would have to make a *prima facie* case before an explanation was due. Defendant replied that Wilson was the only black man in the 14-person panel, failed to disclose traffic violations but so had another venireman, and had no concerning issues in his *voir dire* testimony. The court found that defendant had not made a *prima facie* case of racial discrimination, agreeing that Wilson was the only black man in the panel but noting that two black women were not stricken. Defendant made three peremptory strikes of veniremen, none of whom were the black women.

¶ 8      After another panel of 14 prospective jurors was examined, the State spread of record the criminal history of three veniremen, including Keith Hawkins who had an assault conviction in Alaska and a 1995 conviction for "assault with an attempt sex abuse of a minor." Three veniremen were stricken for cause without objection, and defendant used two peremptory challenges. The State then used three peremptory challenges, including Hawkins. Defendant objected under *Batson* because Hawkins was black, reminding the court of the striking of Wilson. The court asked the State why it excused Hawkins, the State responded to the effect that there was no *prima facie* case, and the court replied "I think there might be" and asked again for an explanation. The prosecutor replied that Hawkins had a conviction for "attempt

criminal sexual assault of a child" and added "I don't feel comfortable with him as a juror." The court found that the State had given a race-neutral reason in Hawkins's prior conviction. Defendant asked to "reopen the question" of striking Wilson, but the court declined. "We can't go backwards at this juncture. He was excused. I felt that was a proper excusal. I asked the State for an excuse as to Hawkins. They gave me one that I feel is race-neutral, so Hawkins is gone as well." The court noted for the record that a jury, including two alternates, had been selected. The two black women were primary, not alternate, jurors.

¶ 9                                    B. Trial

¶ 10    Hill and Lakesha Powell testified to being employees of a particular fast-food restaurant in September 2012. Defendant entered the restaurant on the evening of September 26, 2012, pointed a gun at Powell, grabbed her by the neck, and forced her to the cooler. She noticed that defendant was wearing gloves. Defendant then pointed a gun at Hill, forced Hill and Powell into the cooler, and locked it. While defendant was behind Powell for much of the time, Hill faced defendant from a few feet away with the store lights on and with nothing covering defendant's face. Hill and Powell were in the cooler for about 15 minutes when a fellow employee, Claybourne, freed them. Hill saw defendant near the restaurant on the day after the incident and called the police, but defendant was gone before they arrived. Over a year later, Hill and Powell identified defendant from a photographic array, and Hill also identified him from a lineup.

¶ 11    Claybourne and fellow employee Elijah Williams testified that they were in the restaurant's office on the evening in question, counting cash from a cash register drawer onto a table, when a man entered the room holding a gun. Claybourne identified defendant as that man at trial and in a photographic array and lineup over a year after the incident, but Williams was unable to make an identification. Williams laid face-down on the floor while the man pointed his gun at Claybourne and demanded the money before grabbing the money himself from the table and drawer with gloved hands. The man demanded any security video, and he cocked his gun when Claybourne replied that there was no videotape. The man ordered Claybourne to the floor, threatened to kill him if he followed him, and left the restaurant. Claybourne saw defendant again about a month later and called police, but "[t]hey didn't come."

¶ 12    Following closing arguments, jury instructions, and deliberations, the jury found defendant guilty as charged of aggravated kidnapping while armed with a firearm and armed robbery while armed with a firearm.

¶ 13                                   C. Posttrial

¶ 14    Defendant first filed a general posttrial motion raising no *Batson* claim but later filed an amended posttrial motion raising a *Batson* claim. He noted that he is a black man and that he objected once when the State peremptorily struck the only black man in the first panel of veniremen and again when the State peremptorily struck the only black man in the second panel. He argued that he made a *prima facie* case of discrimination and that the State failed to provide a sufficient reason for the disputed challenges.

¶ 15    The State responded to the amended posttrial motion, noting that defendant's motion did not mention the men and two black persons in the first panel who the State did not challenge. The State argued that defendant failed to state a *prima facie* case in his first objection regarding Wilson because the nonchallenged veniremen included men and two black persons so that the

- 3 -

theory of defendant's case rested on Wilson being "the only one [who] fits both groups jointly." As to the second panel and defendant's objection to striking Hawkins, the State argued again that there were men and black persons who were not stricken by the State and added that, despite the lack of a *prima facie* case, the court had the State explain the Hawkins challenge and then found its explanation of a prior felony conviction to be sufficient.

¶ 16 At the posttrial hearing, defendant argued that he had made a *prima facie* case that the State peremptorily challenged the only two black men in the venire and that the State then failed to sufficiently explain its challenges. The State argued that defendant's trial had black jurors so that the court correctly found no pattern or *prima facie* case of racial discrimination. When the court noted that the State explained the Hawkins challenge, defendant argued that the State's explanation was insufficient because other veniremen had criminal histories.

¶ 17 The court continued the hearing so that it could examine the record regarding jury selection. After it did so, the court spread of record that 2 black veniremen were seated and 1 stricken from the first panel and 1 black venireman was stricken and 1 seated from the second panel, so that there were only 5 black prospective jurors out of 28 total. The court noted that it found no *prima facie* case on the first objection and on the second "I never did—I sort of passed it slightly, the first prong about finding the *prima facie* showing, to really ask the State for a reason why they excused *** Hawkins." The court found the State's explanation—Hawkins's undisclosed conviction for a crime against a child—to be sufficient at the time and still found it so. "It's not necessarily a fantastic reason, but it doesn't require one that's fantastic. It requires one that's race-neutral. They did not want a juror [who] was arrested for sexually abusing a minor, even though it was a while back, and I think that's race-neutral." The court denied the posttrial motion.

¶ 18                                                    D. Sentencing

¶ 19 The presentencing investigation report (PSI) stated in relevant part that defendant had prior felony convictions for a drug offense in 1994, unlawful use of a weapon by a felon (UUWF) in 1998, aggravated unlawful use of a weapon (AUUW) in 2002 in case No. 01-CR-25658, and armed robbery in 2005.

¶ 20 The record shows that the 2002 AUUW conviction was under paragraphs (a)(1) and (a)(3)(A) of the AUUW statute then in force, which was a Class 2 felony as defendant had a prior felony conviction. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2000). The record shows that defendant was charged in case No. 01-CR-25658 with two counts each of AUUW and UUWF, all allegedly committed on the same day in 2001, but does not show whether he was found guilty of more than one count, with merger for sentencing, or of the sentenced AUUW count alone.

¶ 21 At the sentencing hearing, the court noted that defendant had 15-year firearm enhancements for both offenses, sentencing would be concurrent because there was no bodily harm shown, he would have to serve 85% of his aggravated kidnapping sentence, and the armed robbery count could receive an extended term because defendant had a prior conviction for armed robbery. The State argued in relevant part that defendant had an extensive criminal history including three serious offenses involving weapons. The defense argued in mitigation, seeking the minimum sentence, and defendant addressed the court denying that he committed the instant offenses.

- 4 -

¶ 22    The court sentenced defendant to concurrent prison terms of 35 and 21 years. In explaining the sentence, the court called attention to defendant's prior armed robbery conviction but did not mention his other prior convictions. The court explained that 35 years at 50% credit was essentially the same term—between 17 and 18 years—as 21 years at 85%. The court stated that defendant would serve 17 years and 6 months for armed robbery but 17 years, 10 months, and 6 days for aggravated kidnapping. Defendant filed his notice of appeal immediately.

¶ 23                                              III. ANALYSIS

¶ 24    On appeal, defendant contends that (1) the trial court did not properly follow the three-stage procedure for evaluating *Batson* claims and (2) he should be resentenced for armed robbery because his prior conviction for AUUW is facially unconstitutional and void *ab initio*.

¶ 25                                              A. *Batson*

¶ 26    Defendant contends that the trial court did not properly follow the three-stage procedure for evaluating *Batson* claims. Specifically, he argues that the court erred when it (1) did not have the State explain its peremptory challenge of Wilson once the court found a *prima facie* case after the State peremptorily struck Hawkins, (2) found the striking of Wilson proper without explanation, and (3) accepted the State's explanation of the Hawkins challenge without examining whether it was a pretext.

¶ 27    The State argues that defendant forfeited this claim because he did not object to the court not demanding an explanation of the Wilson challenge following his objection to the Hawkins strike. However, immediately after the court disposed of the Hawkins challenge, defendant asked the court to reopen or reconsider the Wilson challenge, and the court declined. Combined with the fact that defendant alleged in his *Batson* claim in his amended posttrial motion that the "State failed to provide a sufficient reason for the *dismissals*" (emphasis added), we will not find forfeiture. The State also argues on the merits that the trial court did not find a *prima facie* case and that defendant did not establish a pattern of discriminatory use of peremptory strikes where the venire and the jury included black persons in similar proportion.

¶ 28    "[T]he State's privilege to strike individual jurors through peremptory challenges[ ] is subject to the commands of the Equal Protection Clause," which "forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson*, 476 U.S. at 89. This principle also applies to gender discrimination in peremptory challenges. *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 65. Generally, there is a "methodical three-step *** approach" to *Batson* claims: "(1) defendant must make a *prima facie* showing that the prosecutor exercised a peremptory strike on the basis of race; (2) the burden then shifts to the prosecutor to provide a race-neutral reason for excluding the juror in question; and (3) the trial court then weighs the evidence and determines if the defendant proved purposeful discrimination." *People v. Davis*, 233 Ill. 2d 244, 253, 255 (2009) (*Davis II*).

¶ 29    While the striking of even a single prospective juror for a discriminatory purpose violates a defendant's constitutional rights, the mere fact that the State peremptorily challenged a venireman of the same race as the defendant, or the mere number of veniremen of the defendant's race peremptorily challenged, will not by itself make a *prima facie* case. *People v. Davis*, 231 Ill. 2d 349, 360-61 (2008) (*Davis I*). The party making a *Batson* claim bears the

burden of making a *prima facie* case. *Davis II*, 233 Ill. 2d at 262. The court shall consider all relevant facts and circumstances in determining whether a defendant has made a *prima facie* case. *Id.* at 256. Relevant factors include:

> "(1) the racial identity between the party exercising the peremptory challenge and the excluded venirepersons; (2) a pattern of strikes against African-Americans on the venire; (3) a disproportionate use of peremptory challenges against African-Americans; (4) the level of African-American representation in the venire compared to the jury; (5) the prosecutor's questions and statements of the challenging party during *voir dire* examination and while exercising peremptory challenges; (6) whether the excluded African-American venirepersons were a heterogeneous group sharing race as their only common characteristic; and (7) the race of the defendant, victim and witnesses." (Internal quotation marks omitted.) *Davis I*, 231 Ill. 2d at 362.

¶ 30    Once a *prima facie* case has been made, the second stage occurs: the State must provide a neutral basis for the strike—that is, an explanation based on something other than the venireman's race or gender as applicable—and the defendant may rebut that explanation as pretextual. *Id.* at 362-63. "Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." *Batson*, 476 U.S. at 97. A venireman's criminal history is a neutral reason for exclusion. *Gonzalez*, 2019 IL App (1st) 152760, ¶ 71.

¶ 31    At the third stage, the court determines whether the defendant has shown purposeful discrimination in light of the explanation and any rebuttal. *Davis I*, 231 Ill. 2d at 363. "The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.* "[W]hen the trial court does not determine whether the defendant made a *prima facie* showing, the State offers an explanation for the peremptory challenge, and the court rules on the ultimate question of intentional discrimination, then the issue of whether the defendant made a *prima facie* showing becomes moot." *Gonzalez*, 2019 IL App (1st) 152760, ¶ 67. Generally, a trial court's ultimate decision on a *Batson* claim will not be overturned unless it is clearly erroneous. *Davis II*, 233 Ill. 2d at 261; *Gonzalez*, 2019 IL App (1st) 152760, ¶ 68.

¶ 32    Here, we agree with the State that the record does not support a key proposition in defendant's contention of error: that the trial court found a *prima facie* case after the Hawkins challenge. If the court did not find a *prima facie* case, then it was not required under *Batson* to demand an explanation of the Wilson challenge, its later remark that the Wilson strike was proper was not a ruling that the State had provided an adequate *Batson*-required explanation, and it was not required under *Batson* to examine whether the State's explanation of the Hawkins strike was pretextual. In short, the contention that the court did not follow the three-stage procedure for *Batson* claims rests upon the contention that the first stage—a *prima facie* finding—was reached.

¶ 33    However, while the court asked the State for an explanation of the Hawkins challenge, when the State demurred, the court said only that "I think there might be" a *prima facie* case. The court explained in denying the posttrial motion that it "never did" find a *prima facie* case but "sort of passed it slightly, the first prong about finding the *prima facie* showing, to really ask the State for a reason why they excused *** Hawkins." In other words, the record establishes that, without having found a *prima facie* case but with an abundance of caution, the

trial court erred to defendant's benefit by asking for the reason for the *Hawkins* challenge. Especially in light of the fact that defendant did not argue until his posttrial motion that the State's reason was inadequate, we see no reason to find that the court's ultimate ruling of denying defendant's *Batson* claim was clearly erroneous.

¶ 34                                B. Sentencing

¶ 35    Defendant also contends that he should be resentenced on armed robbery because his 2002 conviction for AUUW is facially unconstitutional and thus void. The State does not dispute that the AUUW conviction is void and must be vacated but argues that we need not remand this case for resentencing because the court did not rely upon the AUUW conviction in its sentencing.

¶ 36    Defendant was convicted in 2002 in case No. 01-CR-25658 of AUUW under paragraphs (a)(1) and (a)(3)(A) of the AUUW statute then in force, which was in essence possessing in public a firearm that was immediately accessible, uncased, and loaded. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2000). That version of AUUW is facially unconstitutional. *In re N.G.*, 2018 IL 121939, ¶ 32. Thus, a conviction for that version of AUUW "must be treated by the courts as if it did not exist, and it cannot be used for any purpose under any circumstances." *Id.* ¶ 36. Courts have "an independent duty to vacate the void judgment and may do so *sua sponte*" so long as they have jurisdiction and no bar, such as forfeiture, applies. *Id.* ¶ 57. Just as our supreme court in *N.G.* affirmed the vacatur of the void prior conviction for AUUW before it (*id.* ¶¶ 33, 86), we vacate defendant's void prior conviction for AUUW.[1]

¶ 37    We now turn to whether this case should be remanded for resentencing of defendant's armed robbery conviction. Generally, a sentence within statutory limits is set aside only for an abuse of discretion. *People v. Cross*, 2019 IL App (1st) 162108, ¶ 190. Armed robbery and aggravated kidnapping are Class X felonies with a 15-year sentence enhancement when committed while armed with a firearm, so that the sentencing range for each is 21 to 45 years. 720 ILCS 5/10-2(a)(6), (b), 18-2(a)(2), (b) (West 2012); 730 ILCS 5/5-4.5-25(a) (West 2012). We generally defer to the trial court's sentencing determination because, having heard the witnesses and observed the evidence, it is in the best position to determine the appropriate sentence. *Cross*, 2019 IL App (1st) 162108, ¶ 190. The trial court has wide latitude in sentencing a defendant to any term within the applicable statutory range so long as the court does not consider incompetent evidence or improper aggravating factors nor ignore pertinent mitigating factors. *Id.*

¶ 38    However, a void prior conviction is incompetent evidence at sentencing.

> "[A] facially unconstitutional statute and any conviction based on the statute must be treated as if they *never existed*. Because they are nonexistent, as a matter of federal constitutional law, and must therefore be ignored by the courts, using them against a

---

[1]We need not address, but leave for another court to determine if the issue arises again, whether the vacatur requires reversal of defendant's conviction in case No. 01 CR 25658 or merely entry of a modified judgment. He was charged with AUUW and UUWF, and the record before us does not resolve whether he was found guilty of UUWF and AUUW, with two or more guilty counts merged into count I of AUUW for sentencing, or of the latter alone. If he was found guilty of UUWF, he would not be entitled to have his conviction reversed as void in its entirety but to have a UUWF conviction entered in its stead.

defendant in any subsequent proceeding, civil or criminal, is not only conceptually impossible (if something has no legal existence how can it be given any legal recognition?) but would subvert the very constitutional protections that resulted in the statute being found facially invalid to begin with ***." (Emphasis in original.) *N.G.*, 2018 IL 121939, ¶ 74.

Thus, where the State presented a defendant's void prior AUUW conviction and asked the trial court to consider it in sentencing him and the "record [did] not indicate to what extent the court considered the AUUW conviction when crafting the sentences for defendant's other convictions," this court reversed the AUUW conviction and remanded for resentencing on the other offenses, finding that "the AUUW conviction cannot be used for any purpose, including to increase his punishment for a new offense." *People v. Alexander*, 2019 IL App (3d) 170168, ¶ 29 (citing *N.G.*, 2018 IL 121939, ¶ 38). "[S]ince the State did refer to the now vacated conviction[ ] at sentencing, we believe it is more prudent to remand for a resentencing, where the trial court may impose the same sentence or a different one." *Cross*, 2019 IL App (1st) 162108, ¶ 202.

¶ 39 Here, defendant received the minimum applicable sentence for aggravated kidnapping but received an armed robbery sentence 14 years above the minimum sentence. The PSI listed the AUUW conviction, and the State argued it in aggravation as one of his three offenses involving weapons. Ordinarily, we could not conclude on such facts that the trial court's reliance on defendant's prior conviction in case No. 01-CR-25658 was so insignificant that it did not result in a greater sentence. However, unlike *Alexander*, the record clearly establishes that defendant's AUUW conviction did not affect the trial court's sentencing decision. The court explained that it was crafting defendant's armed robbery sentence with 50% credit for good behavior and his aggravated kidnapping sentence where 85% must be served (730 ILCS 5/3-6-3(a)(2)(ii), (a)(2.1) (West 2012)) so that he would serve between 17 and 18 years' imprisonment, assuming good conduct and not considering presentencing detention. Indeed, as the trial court noted, the 21-year minimum sentence for aggravated kidnapping results (with the aforesaid provisos) in 17 years and over 10 months' imprisonment while the facially above-minimum 35-year sentence for armed robbery results in 17 years and 6 months' imprisonment. The court's detailed and clear explanation of its sentencing decision refutes the otherwise eminently reasonable principle that we cannot presume in light of a sentence above the minimum that the void prior conviction had no effect.

¶ 40 IV. CONCLUSION

¶ 41 Accordingly, we vacate defendant's conviction for AUUW in case No. 01-CR-25658. The judgment of the circuit court in the instant case is affirmed.

¶ 42 Affirmed.