2025 IL App (1st) 240149-U

No. 1-24-0149

Order filed October 8, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 23068 (02) |
| | ) | |
| EDGAR DIAZ, | ) | Honorable |
| | ) | Lauren Edidin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Rochford and Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Order dismissing petition for relief from judgment affirmed where trial court did not unduly rely upon a void prior conviction in sentencing defendant to 25 years' imprisonment for attempted first degree murder.

¶ 2     Defendant Edgar Diaz appeals from an order of the circuit court dismissing his petition for relief from judgment filed under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)). He contends that the circuit court erred in dismissing his petition because he stated a meritorious claim that the trial court improperly relied upon a prior void aggravated

unlawful use of a weapon (AUUW) conviction in sentencing him to 25 years' imprisonment for attempted first degree murder. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4     Following a 2014 jury trial, Diaz was convicted of attempted first degree murder and was sentenced to 25 years' imprisonment. We affirmed on direct appeal. See *People v. Diaz*, 2016 IL App (1st) 150237-U. Because we described the trial evidence in detail in our direct appeal order, we summarize it here only as it is relevant to the nature and severity of Diaz's offense for sentencing purposes.

¶ 5     On September 13, 2012, Jonathan Cesena observed Diaz and codefendant Luis Cotto chase and attack a pair of men in a public park at Diversey Harbor. Cesena believed the two men being attacked were gay. When Cesena told Diaz and Cotto to leave the two men alone, Diaz punched Cesena in the face. Cesena and Diaz struggled and ended up on the ground. As Cesena curled into a ball to protect himself, Cotto stabbed him repeatedly with a broken glass bottle while Diaz repeatedly punched and kicked him in the face. As a result of the attack, Cesena suffered a swollen eye, a gash on his head, and stab wounds to his left arm, abdomen, and right thigh. He required 40-60 stitches. During the June 2014 trial, Cesena showed the jury his injuries and testified that he still had pain in those areas. Cesena and an eyewitness to the attack identified Diaz and Cotto as the assailants. Diaz told a friend that he beat two "fa\*\*\*" and stabbed another man.

¶ 6     The jury found Diaz guilty of attempted murder, aggravated battery causing great bodily harm, and aggravated battery causing permanent disfigurement.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 7      The presentencing investigation report (PSI) indicated that Diaz had multiple prior convictions and multiple gang tattoos, and he had admitted to a prior gang affiliation. Diaz also had a two-year-old son and a close relationship with his girlfriend. He had the following convictions: a 2008 unlawful use of a weapon, a 2010 obstructing identification, a 2011 reckless conduct, and a 2012 possession of cannabis. He was convicted in 2009 of aggravated robbery and AUUW, and received consecutive prison terms of four years and one year, respectively.

¶ 8      At the sentencing hearing on September 24, 2014, neither Diaz nor the State suggested any corrections or changes to the PSI. The State presented evidence in aggravation.

¶ 9      Samuel Ramos testified that, in 2008, he was walking with friends down the street when a man "flashed" gang signs at him. Ramos ignored the man and walked on but soon was confronted by three men, including Diaz. Diaz drew a pistol from his waistband and held it to Ramos's face, while demanding to know if he was in a gang. Diaz's companions took Ramos's cellphone from his pocket, punched one of Ramos's friends, and took a gold chain from the friend's neck. The men then yelled a gang slogan as they fled. The State entered into evidence Diaz's certified convictions for aggravated robbery and AUUW.

¶ 10      Chicago police officer Tom Pappas testified that, in 2011, he observed Diaz and another man displaying and pointing at their tattoos, while standing in front of a high school as students left for the day. Pappas observed Diaz making remarks to the passing students. Pappas searched Diaz and found a hunting knife in his pocket, then arrested him on a charge of reckless conduct.

¶ 11      Chicago police officer Kimberly Oppedisano testified that, in 2011, she observed a parked vehicle with four men inside, including Diaz, who was holding a bag containing a substance she suspected was crack cocaine. While the substance tested positive for cocaine, the subsequent possession charge against Diaz was dismissed for lack of probable cause.

¶ 12    Chicago police officer Mike Gremo testified that, in January 2012, he conducted a traffic stop of a vehicle containing Diaz. As Gremo approached, Diaz took items he had been holding in his lap and thrust them into his pocket. Gremo searched Diaz's pockets and found two bags of a green leafy substance he suspected was cannabis.

¶ 13    Gremo also testified that in March 2012 he observed Diaz vandalizing parked vehicles by striking them with a wooden plank, breaking windows and mirrors, as well as causing dents. Diaz's charge of felony criminal damage to property was still pending as of sentencing in this case.

¶ 14    Chicago police officer Matthew Scott testified that he responded to a March 2012 report of a robbery in a liquor store. The store owner told Scott that she observed a man remove a liquor bottle off the shelf and conceal it in his clothing. When she confronted him, he struck her with a knife and fled. Scott observed a small bruise on the owner's arm and viewed security video that corroborated her account. The owner viewed a photographic array, from which she identified Diaz as the man who took the bottle and struck her. Diaz's armed robbery charge was still pending as of sentencing in this case.

¶ 15    Chicago police officer Rubin Delvalle testified that, when Diaz was arrested in May 2012 (on a warrant in the above-referenced criminal damage to property case), a 15-year-old girl was found in his apartment. She had been reported missing by her parents. Officers also recovered a shoebox in Diaz's bedroom that contained a pistol, ammunition, and a substance that tested positive for cocaine. When Delvalle asked Diaz why he had the pistol, Diaz replied that his gang was at war with another gang. Diaz was subsequently charged with armed violence, unlawful use of a weapon by a felon, and possession of a controlled substance; those charges were pending as of sentencing in this case.

¶ 16    The parties stipulated to Diaz's disciplinary reports from the Cook County Department of Corrections (CCDOC) and the Illinois Department of Corrections (IDOC). CCDOC officer Geraldo Roman testified to seeing Diaz and another detainee "jump" or suddenly attack another detainee in 2014, for which Diaz received 10 days in "segregation" for fighting. CCDOC sergeant Isaac Thomas, who investigated the incident, testified that the man who was "jumped" told him that Diaz bumped into him, asked him if he was in a gang, and, after the man said no, attacked him.

¶ 17    Cesena's victim impact statement was entered. Cesena relayed that on the night in question, rather than going fishing in the park, he

> "found myself packing my fleece into a six-inch stab wound and on a hospital table within inches of death. The attack affected my [*sic*] physically, professionally and personally. My physical wounds were devastating. The pain of being stabbed four times is indescribable. Having your side sliced open, cutting through skin and muscle, is a pain like I have never felt. I was physically unable to breathe."

Cesena still had chronic and sharp pain from his injuries, his scars drew stares at the beach, and he had to give up his intensive exercise routine. Though he was happy with his job in Chicago, he had to move to be near his family. He also lost his sense of security, and responded with fear to sudden noises and to anyone approaching him closely from behind.

¶ 18    Cesena stated,

> "The only thing that makes enduring all this worthwhile is I kept the defendant from inflicting worse injuries on the couple I intervened to save. I can hope that I stopped something much worse from happening. I can only hope that all of this emotional pain that I have endured will keep the defendant from victimizing someone else."

Cesena asked the court to keep Diaz "off the streets as long as legally possible."

¶ 19    In mitigation, Diaz presented letters of support from his mother, aunt, and pastor. He further offered a copy of his high school equivalency degree that he had earned in CCDOC, a record of his CCDOC work history, and a certification of a course in business psychology. Diaz's uncle testified that, since his own convictions, he had rehabilitated with the support and assistance of his family, which Diaz would also receive. In allocution, Diaz maintained his innocence, stating that he and his family were disappointed with the outcome of the case. He remarked, "I am growing as a person, and I know that it is important to have positive people in our lives to keep away from self-destruction."

¶ 20    Following arguments, the court noted that it had considered the trial evidence, PSI, and evidence proffered at the sentencing hearing. It found that CCDOC and IDOC records reflected that, while Diaz participated in gang activity while incarcerated, it was mostly "nonsense stuff," including "trying to ferret out friend or foe, using gang signs." The court pointed out that "whenever there is violence, though, in his life," it occurs when he "has help. He never goes it alone. He never stands up on his own. He has to have help. He's strengthened by a gang. He's empowered by the gang."

¶ 21    The court found that, while Diaz had rehabilitative potential and had been offered opportunities, he was not ready or willing to take them but instead was "becoming more and more dangerous." The court did not consider the pending cases except as evidence that Diaz was not deterred from "picking up cases" while on bond. The court detailed that Cotto had received four years' imprisonment pursuant to a plea agreement; however, the court noted that a "difference of sentences may be justified by relative character and history of the defendants." It stated Diaz was "calling the shots [and] leading the charge," during the instant offense, while Cotto was "the

muscle." The court stated that Diaz "has been running with the gang, getting in trouble, [and] victimizing people" since his youth. Cesena, on the other hand,

"came to the aid of others in a very public place *** that we all deserve to enjoy and he came to the aid of someone—of some people and with that, he almost died. And it mirrors the other places that [Diaz] likes to harass, public schools, stores. *** We don't want people like [Diaz] victimizing good citizens in very public places."

¶ 22    The court sentenced Diaz to 25 years' imprisonment on the count of attempted first degree murder and merged the lesser two aggravated battery counts into the attempted murder count.

¶ 23    Diaz filed a motion to reconsider his sentence, arguing that 25 years was excessive and disproportionate considering his rejected plea offer of three years' imprisonment. He further highlighted that Cotto received only four years' imprisonment upon his guilty plea to aggravated battery, despite Cotto being the one who stabbed Cesena. The trial court denied the motion.

¶ 24    We affirmed on direct appeal. *Diaz*, 2016 IL App (1st) 150237-U, ¶ 2. None of Diaz's contentions on direct appeal concerned his sentence. *Id*. In finding sufficient evidence to convict Diaz, including for Cotto's stabbing of Cesena, we stated:

"In the case at bar, [Diaz] and Cotto were together following the two men at the harbor. When the victim intervened, both [Diaz] and Cotto delivered blows to the victim. While Cotto stabbed the victim with a broken bottle, [Diaz] continued to participate in the crime by hitting and kicking the victim, thereby keeping him on the ground, susceptible to continued attacks from both offenders. Accordingly, viewing the evidence in a light most favorable to the prosecution, we find that the State proved a common design beyond a reasonable doubt." *Id.* ¶ 41.

¶ 25    On February 27, 2023, Diaz, through counsel, filed the instant petition for relief from judgment, citing section 2-1401 of the Code, but titling the pleading "Motion to Vacate Sentence and for New Sentencing Hearing." He claimed that his prior AUUW was void pursuant to *People v. Aguilar*, 2013 IL 112116, and thus it was error for the State to proffer, and the trial court to consider, his AUUW conviction as aggravation for the case at bar. He noted that his AUUW conviction was vacated in 2021 and attached circuit court orders to that effect.

¶ 26    The State filed a motion to dismiss Diaz's petition, arguing it was untimely filed under section 2-1401 and that Diaz had failed to show due diligence.

¶ 27    Diaz responded, noting that petitions for relief from void judgments can be filed at any time, that he has been in the IDOC since his 2014 conviction, and that his AUUW conviction was not vacated until 2021 (despite filing the petition in 2019). He claimed that, although he "cited to Section 2-1401 in his Motion to Vacate Sentence, the Petition is premised upon constitutional principles, rather than strictly civil procedural law." Substantively, Diaz argued that because *Aguilar* was decided in 2013, his AUUW conviction was void at the time of his sentencing hearing in the instant case. However, trial counsel failed to object to both the conviction's inclusion in the PSI and the State's use of the conviction in aggravation.

¶ 28    On December 15, 2023, the circuit court granted the State's motion to dismiss Diaz's section 2-1401 petition, "for the reasons stated in their motion." The court agreed with the State's argument that neither the instant conviction nor sentence was rendered void by the parties' consideration of Diaz's prior AUUW conviction. Diaz's timely appeal followed.

¶ 29                                    II. ANALYSIS

¶ 30    On appeal, Diaz contends that the circuit court erred in dismissing his petition for relief where he stated a meritorious claim that the trial court improperly relied upon his prior void

AUUW conviction in sentencing him for the instant conviction of attempted first degree murder. He highlights that his AUUW conviction was vacated in 2021 and he was subsequently granted a certificate of innocence.

¶ 31 Section 2-1401 creates a statutory mechanism for convicted defendants to seek relief from "final judgments older than 30 days." *People v. Stoecker*, 2020 IL 124807, ¶ 18. Where the State fails to file a responsive pleading to a section 2-1401 petition, the circuit court may dismiss the petition *sua sponte* if, after taking all well-pled facts as true, it finds no meritorious legal basis for relief. *Id.* ¶ 19. However, where the State chooses to file a motion to dismiss, the court may grant the motion only after the defendant has had notice of and an opportunity to respond to the State's motion. *Id.* ¶¶ 18-21. The dismissal of a section 2-1401 petition is reviewed *de novo*. *People v. Wells*, 2023 IL 127169, ¶ 23.

¶ 32 A petition for relief from judgment under section 2-1401 must be filed within two years of the judgment being challenged, unless the judgment at issue is void, "the person seeking relief is under legal disability or duress[,] or the ground for relief is fraudulently concealed." 735 ILCS 5/2-1401(c), (f) (West 2022). While a challenge to a void judgment can be raised at any time, a judgment is void under only two circumstances: (1) it was entered by a court that lacked personal or subject-matter jurisdiction or (2) it is based on a statute that is facially unconstitutional and void *ab initio*. *Stoecker*, 2020 IL 124807, ¶ 28.

¶ 33 For a defendant to obtain relief under section 2-1401, they must demonstrate both the existence of a meritorious claim and due diligence in filing the petition. *People ex rel. Alvarez v. $59,914 United States Currency*, 2022 IL 126927, ¶ 16.

¶ 34 Our supreme court found certain subsections of the AUUW statute facially unconstitutional in *Aguilar*, 2013 IL 112116, and has since held that "the state is barred from giving *any* legal

recognition to a conviction based on a facially unconstitutional statute." (Emphasis in original.) *In re N.G.*, 2018 IL 121939, ¶ 38.

> "[N]ot only must the State stop charging defendants under the invalidated law in future prosecutions, it is precluded from using past convictions under the facially unconstitutional law in any subsequent proceedings 'to support guilt or enhance punishment for another offense,' for doing so would be tantamount to forcing the defendant to suffer anew the deprivation of his constitutional rights." *Id.* (quoting *United States v. Bryant*, 579 U.S. 140, 140 (2016)).

A "facially unconstitutional statute and any conviction based on the statute must be treated as if they *never existed*." (Emphasis in original.) *Id.* ¶ 74.

¶ 35 As this court stated in *People v. Hearring*, 2022 IL App (1st) 192064, ¶ 28, when the trial court relies on a void conviction in imposing sentence, the sentence may be affirmed only if the record clearly establishes that the void conviction did not affect the court's sentencing decision. We may affirm if an improperly considered sentencing factor was "so insignificant" that it clearly "did not lead to a greater sentence." *Id.* (quoting *People v. Heider*, 231 Ill. 2d 1, 21 (2008)). If the record on appeal fails to indicate to what extent the trial court considered the void conviction, this court must remand for resentencing. *Id.* ¶ 29. Conversely, as this court stated in *People v. Bridges*, we may affirm if the trial court's "detailed and clear explanation of its sentencing decision refutes the otherwise eminently reasonable principle that we cannot presume in light of a sentence above the minimum that the void prior conviction had no effect." 2020 IL App (1st) 170129, ¶ 39.

¶ 36 Here, as a threshold matter, we are not reviewing a challenge to a void conviction. Rather, Diaz challenged his conviction and 25-year sentence for attempted first degree murder. Diaz does not claim that the circuit court lacked jurisdiction to convict him of attempted first degree murder

nor that said offense is facially unconstitutional. Instead, Diaz relies on the voidness of his 2009 AUUW conviction, which was vacated in 2021. The issue raised in Diaz's petition was the effect of the trial court's consideration of his void AUUW conviction at his sentencing hearing in the instant case.

¶ 37   However, as stated above, section 2-1401 requires that a petition seeking relief be filed within two years of the judgment being challenged. Here, Diaz's February 2023 petition was not filed until nearly a decade after his September 2014 sentencing. As discussed above, the judgment *at issue* is not void and therefore the statutory two-year limitation applies. 735 ILCS 5/2-1401(c), (f) (West 2022). Diaz does not claim that the voidness of his AUUW conviction was fraudulently concealed from him, nor that he was under legal disability or duress. We therefore find that the petition was untimely filed and that the dismissal of the petition on that basis was not erroneous.

¶ 38   Even if the petition had been timely filed, we would affirm the circuit court's grant of the State's motion to dismiss the petition on the basis that the petition did not state a meritorious claim. We find that the improperly considered AUUW conviction was "insignificant" in the overwhelming weight of aggravating evidence the State presented. *Heider*, 231 Ill. 2d at 21. During Diaz's sentencing, the trial court gave a detailed and clear explanation of its decision, in refute of the "principle that we cannot presume in light of a sentence above the minimum that the void prior conviction had no effect." *Bridges*, 2020 IL App (1st) 170129, ¶ 39. The trial court did not mention the AUUW conviction in its justification of Diaz's sentence. Rather, the court's central premise in imposing sentence was that Diaz (1) continued to commit offenses and infractions because of his gang involvement, (2) was not ready for rehabilitation, and (3) was emboldened to be violent in even the most public of places when he had one or more gang members with him. Had the AUUW conviction not been entered into evidence in aggravation, that finding

would remain unchanged. We are confident in concluding that the void AUUW conviction did not contribute to a greater sentence. Therefore, we find no basis to grant Diaz the relief of a vacatur or a remand for resentencing. *Heider*, 231 Ill. 2d at 21 (a sentence "will not be affirmed unless the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence"). Dismissal of Diaz's section 2-1401 petition was thus proper.

¶ 39                                    III. CONCLUSION

¶ 40     Accordingly, the judgment of the circuit court is affirmed.

¶ 41     Affirmed.