2026 IL App (1st) 240576
Opinion filed April 10, 2026
Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 21812 (02) |
| | ) | |
| BERLY VALLADARES, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Pucinski concurred in the judgment and opinion.
Justice Gamrath specially concurred, with opinion.

**OPINION**

¶ 1    Illinois courts may not use void judgments for any purpose, especially not to punish defendants at sentencing. Yet for several years, our courts sustained a maze of rules and procedures petitioners had to navigate to vindicate their rights.

¶ 2    Berly Valladares successfully vacated a prior conviction as void and then sought leave to file a successive postconviction petition, alleging that the sentencing court relied on that void conviction when punishing him. We review the caselaw in effect when Valladares filed his initial postconviction petition and examine the record of his sentencing hearing. We conclude (i) the

circuit court erred by denying him leave to file his petition and (ii) the record contains all available evidence necessary to establish his claim. We reverse and remand for a new sentencing hearing.

¶ 3                                      BACKGROUND

¶ 4     Berly Valladares successfully vacated a prior conviction and then sought leave to file a successive postconviction petition. He contended that the vacated conviction, which was void under *People v. Aguilar*, 2013 IL 112116, had impacted his sentencing hearing for separate offenses. The circuit court denied Valladares leave to file. We recount the facts necessary to resolve this appeal.

¶ 5                                         Trial

¶ 6     On Halloween 2009, three men arrived at a house party uninvited but left at the host's behest. A short time later, one of the men, Narcisco Gatica, returned and discharged a firearm, killing Francisco Valencia and wounding Daisy Camacho. Cell phone records and a police investigation placed Valladares near the scene at the time of the shooting.

¶ 7     Valladares admitted, during the investigation and in his trial testimony, that, as a long-time gang member and the gang's "gun holder," he provided a loaded firearm to Gatica the night of the shooting and knew Gatica wanted it for retaliation. Valladares accompanied Gatica to the party, wore a hood to conceal his identity, and fled when Gatica discharged the firearm.

¶ 8     The jury, instructed on accountability, found Valladares guilty of first degree murder committed with a firearm and aggravated battery with a firearm.

¶ 9                                    Sentencing

¶ 10    The presentence investigation indicated that Valladares was 21 years old at the time of the shooting and had prior convictions for criminal defacement of property with a year's supervision (in 2006) and aggravated unlawful use of a weapon (AUUW) with two years' probation (in 2007).

¶ 11    Valladares was close to his parents and siblings and had a "good childhood" in a "stable" home, although it was in a "bad neighborhood." He admitted belonging to a gang since age 12. He reported having a good relationship with his young son but did not provide financial support. He completed elementary school, was in special education in the ninth grade, and quit high school in the eleventh grade. He worked as a forklift operator before his arrest. He claimed to be in good physical and mental health and used, but did not abuse, alcohol and marijuana.

¶ 12    In aggravation, the State presented victim impact statements and other testimony. Camacho described her friendship with Valencia and stated that the shooting "permeates every area of [her] life[.]" Valencia's brother read his statement describing the support and inspiration Valencia had provided him and his fear of crime and socializing since Valencia's death. Valencia's mother read a statement providing "a glimpse of [her] unspeakable, unimaginable despair, pain, suffering, and deep grief" and the impact Valencia had while alive. And the State provided written statements from a sister and another parent of Valencia. Finally, a Chicago police officer testified that he purchased a loaded firearm from Valladares in a cash transaction weeks before the shooting.

¶ 13    The State argued that Valladares was a "danger" who "doesn't care what happens with guns that he gives out to street gang members." The State urged the court to "[l]ook at his prior conviction *** in 2007 for a gun offense." The State also argued that Valladares's two years of probation for AUUW did not "straighten *** him out," as shown by the "gun sale *** a few weeks

before this happened," which reinforced that "[h]e will pass out guns to whomever." The State argued Valladares was a "murderer who doesn't care what happens with guns."

¶ 14    In mitigation, Valladares presented 13 letters, including from his parents, siblings, minister, and friends. Valladares's sister read a statement describing him as a good family member and good person.

¶ 15    Counsel argued that the effect of the shooting was undeniable, but Valladares's family was also destroyed by his "stupid mistake." Counsel posited that Valladares shot no one and his "criminal background literally consists of exactly what happened in the case, the possession of a weapon."

¶ 16    The court sentenced Valladares to 70 years in prison, comprising 55 years for first degree murder, including a 15-year firearm enhancement, and 15 years for aggravated battery with a firearm. The court stated it considered the trial evidence, sentencing evidence, and all the factors in aggravation and mitigation. The court noted the evidence that Valladares was a good family member but agreed with the State that Valladares was a "danger" because he "obviously deals with guns and violence" and "[h]is prior conviction was for a weapons offense."

¶ 17    The court later denied Valladares's motion to reconsider the sentence. Valladares did not challenge his sentence on direct appeal. We affirmed. *People v. Valladares*, 2013 IL App (1st) 112010, ¶¶ 123-24.

¶ 18                          Other Collateral Proceedings

¶ 19    We have since affirmed the summary dismissal of Valladares's 2014 initial postconviction petition, the dismissal of his 2015 petition for relief from judgment, and denials of leave to file two successive postconviction petitions in 2016. *People v. Valladares*, 2022 IL App (1st) 200161-

U, ¶¶ 2-4, 13-16; *People v. Valladares*, 2019 IL App (1st) 163010-U, ¶¶ 2, 11-13; *People v. Valladares*, No. 1-16-0865 (2018) (unpublished summary order under Illinois Supreme Court Rule 23(c)); *People v. Valladares*, 2016 IL App (1st) 142721-U, ¶¶ 2, 10-11. Valladares did not challenge his sentence in those proceedings.

¶ 20 Valladares did, however, challenge his sentence when petitioning for a certificate of innocence, as he highlighted in the amended appendix to his appellant brief. See also *In re N.G.*, 2018 IL 121939, ¶ 58 (authorizing courts to take judicial notice of official court records). On September 22, 2023, the circuit court vacated his 2007 conviction for AUUW (720 ILCS 5/24-1.6(a)(1) (West 2006)) in Cook County Case No. 07 CR 04199 and granted the certificate under *Aguilar*, 2013 IL 112116.

¶ 21                                Successive Postconviction Petition

¶ 22 Valladares then petitioned for leave to file a successive postconviction petition. He argued that his prior conviction for AUUW was void under *Aguilar*, and, thus, its use in aggravation at sentencing violated due process. He could show cause because, before *In re N.G.*, he could not raise his claim without first vacating his conviction as void. He could show prejudice because his void AUUW conviction may have increased his sentence.

¶ 23 The circuit court denied Valladares leave to file a successive postconviction petition. The court found that Valladares was not entitled to resentencing because the void AUUW conviction played an insignificant role in the sentencing court's decision. Further, Valladares could not establish cause because he could have argued in any of his prior postconviction petitions that his void AUUW conviction was improperly considered at sentencing.

¶ 24                                    ANALYSIS

¶ 25    Valladares contends the circuit court erred by denying him leave to file because (i) his sentencing claim was unavailable when he filed his first postconviction petition, which establishes cause, and (ii) that void conviction played a significant role in the sentencing court's conclusion that Valladares presented a danger to society, which establishes prejudice. We agree.

¶ 26                        Successive Postconviction Proceedings

¶ 27    The Post-Conviction Hearing Act (Act) contemplates the filing of one petition by right and successive petitions with leave of court. 725 ILCS 5/122-1(f) (West 2022). This process under the Act ensures that procedural rules do not undermine fundamental fairness. *People v. Blalock*, 2022 IL 126682, ¶ 38. Petitioners may litigate successive petitions by invoking the "cause and prejudice" exception. *Id.*

¶ 28    A petitioner establishes "cause" by identifying an objective factor that prevented him or her from raising a specific claim in the initial petition. 725 ILCS 5/122-1(f) (West 2022). The supreme court has observed " ' "that a showing that the factual or legal basis for a claim was not reasonably available" ' " will establish cause. *People v. Pitsonbarger*, 205 Ill. 2d 444, 460 (2002) (quoting *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999), quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). A petitioner establishes "prejudice" by showing the claimed constitutional error so infected the trial that the resulting conviction or sentence violated due process. *People v. Davis*, 2014 IL 115595, ¶ 14.

¶ 29    We review *de novo* whether Valladares established cause and prejudice, allowing him to litigate his claim in a successive postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶¶ 13, 26.

¶ 30                                            Cause

¶ 31     Valladares contends he established cause because, at the time he filed his initial postconviction petition, caselaw precluded him from seeking to vacate his 2007 conviction in a petition collaterally attacking his 2009 conviction. We agree.

¶ 32     When Valladares first petitioned for postconviction relief, the proper pleading for vacating his 2007 conviction was not a postconviction petition attacking his 2009 conviction. To be sure, the Illinois Supreme Court had held in *Aguilar* that AUUW under 720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008), was facially unconstitutional under the second amendment and thus void. *Aguilar*, 2013 IL 112116, ¶ 22 (filed September 12, 2013, and modified on denial of hearing December 19, 2013). But *Aguilar* did not address how to handle a sentencing court's later use in aggravation of a not-yet-vacated conviction.

¶ 33     This court took up that issue in *People v. Ware*, where we rejected the claim that we could exercise jurisdiction over those prior convictions, even if the sentencing court relied on them in aggravation and the defendant was directly appealing from that sentence. *People v. Ware*, 2014 IL App (1st) 120485, ¶¶ 33-36. We likewise rejected remanding for resentencing, even if the sentencing court had considered a void conviction in aggravation because the prior convictions were not used as an element of the charged offense or as the basis for a statutory enhancement or extended-term sentence. *Id.* ¶ 34. For the appellant in *Ware*, *Aguilar*'s substantive right had no enforcement mechanism. See also *People v. McFadden*, 2016 IL 117424, ¶¶ 19-21 (concluding, "void *ab initio* doctrine would enable [defendant] to seek to vacate his [void] conviction by filing an appropriate pleading").

¶ 34    In 2014, Valladares needed to vacate the 2007 conviction by first filing—in that separate case, Cook County Case No. 07 CR 04199—either a postconviction petition or section 2-1401 petition. See 725 ILCS 5/122-6 (West 2014) (articulating circuit court jurisdiction in postconviction cases); 735 ILCS 5/2-1401(a), (b) (West 2014) (articulating relief available by petitions for relief from judgment); see *People v. Harvey*, 196 Ill. 2d 444, 446-47 (2001) (approving of use of section 2-1401 as appropriate avenue for relief from void criminal judgment); *People v. Thompson*, 2015 IL 118151, ¶¶ 31-33 (abrogating *Harvey* but recognizing section 2-1401 as appropriate vehicle for void *ab initio* challenges).

¶ 35    But Valladares's deadline for filing an initial postconviction petition attacking the 2009 conviction approached quickly. See generally 725 ILCS 5/122-1(c) (West 2014) (defining time limits for filing initial petition in 2014). We affirmed his conviction and sentence on July 24, 2013, before the supreme court decided *Aguilar*. *Valladares*, 2013 IL App (1st) 112010, ¶¶ 123-24. The supreme court denied him leave to appeal on November 27, 2013, before it modified *Aguilar* on denial of rehearing. *Valladares*, 2013 IL App (1st) 112010, *leave to appeal denied*, No. 116628 (Ill. Nov. 23, 2013). And Valladares timely petitioned for postconviction relief on May 2, 2014. 725 ILCS 5/122-1(c) (West 2014) (defining time limits for filing initial petition in 2014).

¶ 36    Still, about one month before Valladares filed his initial petition, this court decided *Ware*. *Ware*, 2014 IL App (1st) 120485. So even though Valladares met the deadline to file his initial postconviction petition, caselaw had already precluded him from seeking to vacate his 2007 conviction in that petition collaterally attacking his 2009 conviction. See 725 ILCS 5/122-1(f) (West 2022) (defining "cause" as identifying objective factor preventing petitioner from raising specific claim in initial petition).

¶ 37    Indeed, the Illinois Supreme Court later affirmed *Ware*'s reasoning in *McFadden*, which held that an *Aguilar* conviction was not "deemed vacated until a court with reviewing authority has so declared." *McFadden*, 2016 IL 117424, ¶ 31. Because "*Aguilar* did not automatically overturn that judgment of conviction," the conviction could still be used in other legal proceedings. *Id*. The supreme court stated the defendant should have "properly sought to vacate his" conviction so that the voidness of the prior conviction "could have been adequately considered and resolved in an appropriate proceeding." *Id.* ¶ 33.

¶ 38    The defendant in *McFadden* had also argued that his void *Aguilar* conviction was an improper sentencing factor. *Id.* ¶ 40. The supreme court rejected the claim, "reiterat[ing] that the constitutional invalidity of defendant's *** conviction is not confirmed by the record in this case." *Id.* ¶ 41. That is, although the defendant was convicted of an *Aguilar* offense, the record did "not affirmatively reflect that [he had] pleaded guilty under section 24-1.6(a)(1), (a)(3)(A), the only section held unconstitutional in *Aguilar*." *McFadden*, 2016 IL 117424, ¶ 33. Until the voidness of the conviction was properly recognized and vacated in an appropriate proceeding, the court rejected the possibility of resentencing even if the sentencing court had relied on it. *Id.* ¶¶ 33, 41.

¶ 39    In short, Valladares's conviction was void but not vacated when he filed his initial petition in 2014, and at that time, the law treated that distinction as meaningful.

¶ 40    We recount this history to consider and reject the State's suggestion that Valladares could have raised this sentencing claim when he filed his initial postconviction petition. In support, the State cites a 2018 decision from the Illinois Supreme Court overruling *McFadden*. *N.G.*, 2018 IL 121939, ¶ 84. The State then faults Valladares for "rais[ing] an argument premised on a distinction

of the kind *N.G.* overruled: that his 2007 conviction technically was never vacated, but only subject to vacatur."

¶ 41    The State mischaracterizes Valladares's argument. Valladares does not ask this court to draw the distinction *N.G.* overruled. He asks us to acknowledge how that distinction operated in 2014 to preclude him from seeking to vacate his 2007 conviction in a petition collaterally attacking his 2009 conviction.

¶ 42    Nowhere in its response brief does the State address pertinent caselaw in 2014, when Valladares filed his initial postconviction petition. Under *N.G.*, a petitioner could successfully petition today for postconviction relief, raising a sentencing claim identical to that in Valladares's, even without the prior void conviction having been vacated. See *In re N.G.*, 2018 IL 121939, ¶ 57. But the State fails to acknowledge how Valladares's claim was unavailable four years before *N.G.*, when he first petitioned for postconviction relief.

¶ 43    For similar reasons, we reject the State's reliance on a Rule 23 order. In *Dillon*, without citation to relevant authority, the panel stated: "[T]here is no question that defendant could have raised this issue in his postconviction petition." *People v. Dillon*, 2023 IL App (1st) 220472-U, ¶ 36. On the contrary, "[f]or many years, after *Aguilar*, even our courts could not agree on how a petitioner should proceed with an *Aguilar*-based claim." *People v. Key*, 2025 IL App (1st) 240284-U, ¶ 36 n.4 (citing *McFadden*, 2016 IL 117424, ¶¶ 29-33). *Dillon* saying it was so did not make it so. Cases like *Ware* and *McFadden* operated as bars to petitioners like Valladares until they were overruled in *N.G.*

¶ 44    Finally, the State argues that Valladares's 2015 petition under section 2-1401 presented an opportunity to raise this specific claim. It did not. Under the Act, the analysis for cause rests on

the availability of the claim during the "initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2014).

¶ 45    Accordingly, Valladares established cause because, at the time he filed his initial postconviction petition in 2014, caselaw precluded him from seeking to vacate his 2007 conviction in a petition collaterally attacking his 2009 conviction.

¶ 46                                    Prejudice

¶ 47    Valladares also contends he established prejudice as the sentencing court relied on his void conviction when sentencing him to 70 years in prison. We agree.

¶ 48    To begin, we observe how the State does not respond to this part of Valladares's argument on appeal. See Ill. S. Ct. R. 341(h)(7), (i) (eff. Oct. 1, 2020) (argument "shall contain the contentions *** and the reasons therefor, with citation of the authorities," and "[p]oints not argued are forfeited"). We honor the State's forfeiture of its argument on prejudice. See generally *Vancura v. Katris*, 238 Ill. 2d 352, 369-73 (2010) (holding that point not argued is forfeited).

¶ 49                        Effect of Void Conviction at Sentencing

¶ 50    When a sentencing court cites a void conviction, we will affirm the sentence only if the record establishes that the void conviction did not affect the sentencing decision. *People v. Hearring*, 2022 IL App (1st) 192064, ¶¶ 28-30. If the record "raises the possibility that the trial court relied on the facially invalid statute," the case must be remanded for a new sentencing hearing. *People v. McCants*, 2024 IL App (1st) 220837, ¶ 40.

¶ 51    Here, the record raises that possibility. When announcing Valladares's sentence, the sentencing court agreed with the State that he was a "danger" because he "obviously deals with guns and violence" and noted that "[h]is prior conviction was for a weapons offense." See

*Hearring*, 2022 IL App (1st) 192064, ¶ 34. The court singled out Valladares's void conviction and the gun sale, mentioned those considerations first, and then stated that it had considered the various statutory factors in aggravation and mitigation. Even when a sentencing court properly considers multiple factors, the State's introduction of a void prior conviction as an aggravating factor is substantial enough to warrant resentencing. See *People v. Alexander*, 2019 IL App (3d) 170168, ¶ 29 (remand for resentencing where State presented void conviction and asked it be considered).

¶ 52    A full review of the sentencing hearing shows the court's decision tracked the State's contentions in aggravation. The State leaned on Valladares's void conviction to paint him as a criminal with a record of gun crime, urging the court to "[l]ook at his prior conviction. . . in 2007 for a gun offense." The State criticized Valladares for the failure of this prior conviction and its sentence to rehabilitate him, saying the punishment "really straightened him out, didn't it?" And the State urged that the AUUW conviction together with the controlled gun purchase showed Valladares was "murderer who doesn't care what happens with guns" and "will pass out guns to whomever."

¶ 53    The State and the sentencing court highlighted the void conviction, and that impacted the sentence Valladares received. See *Alexander*, 2019 IL App (3d) 170168, ¶ 29. Valladares established prejudice because any weight given to a void conviction constitutes error requiring resentencing. See *Davis*, 2014 IL 115595, ¶ 14; *Hearring*, 2022 IL App (1st) 192064, ¶¶ 28-41.

¶ 54    Further, because Valladares's claim can be established on the available record, we reverse the dismissal of his motion for leave to file, grant his petition, and remand for a new sentencing hearing. See *People v. Buffer*, 2019 IL 122327, ¶¶ 46-47 (remanding postconviction petition for

new sentencing hearing because "[a]ll of the facts and circumstances to decide defendant's claim are already in the record").

¶ 55    Nothing in our decision diminishes the seriousness of the offense or the harm suffered by the victims and their family. And we express no view on the sentence to be imposed on remand.

¶ 56    Reversed and remanded with directions.

¶ 57    JUSTICE GAMRATH, specially concurring:

¶ 58    I agree that we should not presume that a void prior conviction had no impact on sentencing when the court takes specific note of it. I write separately to emphasize that resentencing is unnecessary when the court thoroughly explains its sentencing decision and it is clear the void conviction had an insignificant effect. See *People v. McFadden*, 2016 IL 117424, ¶ 41, *overruled on other grounds by In re N.G.*, 2018 IL 121939; *People v. Dillon*, 2025 IL App (1st) 241535, ¶ 41; *People v. Ware*, 2023 IL App (1st) 220579-U, ¶ 41; *People v. Bridges*, 2020 IL App (1st) 170129, ¶ 39.

¶ 59    This case is a close call. At the sentencing hearing, Valladares's defense attorney acknowledged that a life sentence was unavoidable. Valladares faced 41 to 105 years' imprisonment, and the judge imposed a midrange sentence of 70 years. By law, Valladares must serve 100% of the murder portion and 85% of the aggravated battery portion. His accomplice received 90 years.

¶ 60    The sentencing court emphasized the tragedy for both sides with two families broken and destroyed. The testimony in aggravation is heart wrenching, and the record supports defense counsel's characterization that Francisco Valencia "was one of the best," whose promising life

was cut short by Valladares without justification. He supplied the gun to the shooter, knowing it would be used; watched the shooting happen; and fled.

¶ 61    In describing Valladares as someone who "obviously deals with guns and violence," the sentencing court mentioned his void AUUW conviction, as well as his position as "gun holder" of his gang and the fact he sold a gun on the street to an undercover officer just weeks before the murder. The court emphasized these latter two facts when it denied Valladares's motion for reconsideration.

¶ 62    Although Valladares's void AUUW conviction appears minor, the State argued it, and the court did refer to it at sentencing. As we've said before, "it is more prudent to remand for a resentencing, where the trial court may impose the same sentence or a different one" than to guess at a conviction's impact. (Internal quotation marks omitted.) *Bridges*, 2020 IL App (1st) 170129, ¶ 38. However, had the court articulated its sentencing rationale more clearly or refrained from mentioning the void AUUW conviction, resentencing would be unnecessary, sparing Daisy Camacho's and Francisco Valencia's loved ones further pain. While I take no position on the appropriate sentence upon remand, given the nature and seriousness of the offenses and the relatively minor mention of the void AUUW conviction, the same sentence could still result after proper consideration of all relevant aggravating and mitigating factors.

_____

### *People v. Valladares*, 2026 IL App (1st) 240576

_____

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 09-CR-21812(02); the Hon. Ursula Walowski, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Daniel H. Regenscheit, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Amy McGowan, and Zach Van Duyn, Assistant State's Attorneys, of counsel), for the People. |